# EXHIBIT A

FILED
CA COPY

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA
2014 DEC -2  PM 2: 11

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

MIDWESTERN MIDGET
FOOTBALL CLUB INC.,

　　　　Plaintiff,

v.

RIDDELL, INC.,

　　　　Defendant.

CASE NO.: 14-C-2112
Tabit

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

1.　　　Plaintiff Midwestern Midget Football Club, Inc., a non-profit youth football organization, purchased Riddell Revolution football helmets ("Revolution Helmets"). Defendant Riddell, Inc. is involved, *inter alia*, in the design, manufacture, marketing, and sale of the Revolution Helmets. Riddell sells Revolution Helmets at a market price reflecting marketing claims that the helmets reduce the incidence of concussion in comparison with its own, earlier helmet designs and helmets of competitors. In particular, the Revolution Helmets were marketed as containing "concussion reduction technology" which reduces the incidence of concussion by up to "31%."

2.　　　These marketing statements were knowingly false. Riddell's assertions were based upon a statistically unsound study paid for by Riddell and co-authored by a Riddell employee, and publically criticized by third-party scientists. Scientific studies and other data of which Riddell was aware indicate that the Revolution Helmets make no material difference to a player's risk for concussion as compared to other traditional football helmets.

3.      Unfortunately, this marketing was successful. Plaintiff and others purchased Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of concussion in comparison with other helmets. Plaintiff now sues Riddell on its own behalf and on behalf of a class for violating the West Virginia Consumer Credit and Protection Act ("WVCCPA"), seeking injunctive relief, the greater of actual damages or statutory damages, and attorney's fees and costs.

### WEST VIRGINIA CODE § 46A-6-106

4.      On October 10, 2014, Plaintiff sent Defendant Riddell, Inc. a "cure letter" pursuant to West Virginia Code § 46A-6-106 via United States Certified Mail (7013 3020 0000 7168 5449). A copy is attached hereto as Ex. A. Plaintiff did not receive a response to this letter.

### PARTIES

5.      Plaintiff Midwestern Midget Football Club Inc. ("Midwestern Football") is an incorporated non-profit youth football organization, operating in Kanawha County, West Virginia and a citizen of West Virginia. Approximately 150 youths participate in the program every year. Midwestern Football supplies the helmets for these participants. Each year, Midwestern Football purchases between 12 and 24 new Riddell Revolution Helmets. Older helmets are refurbished when appropriate, and Midwestern Football sends older Riddell Revolution Helmets to All American Sports Corporation for refurbishing. Midwestern Football purchases Revolution Helmets and the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia.

2

6.      Defendant Riddell, Inc. is a subsidiary corporation of Riddell Sports Group, Inc., organized and existing under the laws of the State of Illinois with a principal place of business in the State of Illinois. Riddell, Inc. is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution Helmets. This defendant ships its products, including Revolution Helmets, to purchasers and distributors in West Virginia, maintains a direct sales force in West Virginia, sells its products in retail stores in West Virginia, and advertises its products in West Virginia. Riddell, Inc. is a subsidiary of Riddell Sports Group, Inc. Through a corporate sibling, All American Sports Corporation, it is engaged in the reconditioning of Riddell helmets, including Revolution Helmets, and related marketing in West Virginia.

## FACTS

7.      Riddell has engaged in the design, development, manufacture, sale, and distribution of football equipment, including helmets, since 1922.

8.      In or about 2000, while Riddell was designing and developing the Revolution Helmet, Biokenetics, a biomechanics firm hired by the NFL and later retained by Riddell, sent Riddell a report showing that no football helmet, no matter how revolutionary, could prevent concussions.

9.      In 2002, Riddell introduced for sale the first versions of the Riddell Revolution Helmet, which Riddell manufactured, sold, and distributed. Riddell claimed that the Revolution Helmet was designed to reduce the risk of concussion.

10.      In 2002, Riddell provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for a study comparing rates of concussions among high school athletes who wore Revolution Helmets with those who wore traditional helmets.

11.      Riddell used the results of this study to claim that the Revolution Helmet reduced concussions by 31%, despite UPMC's recommendation that Riddell not make such claims and peer reviewed comments expressing concerns that the study suffered "serious, if not fatal, methodological flaws." In the *Journal of Neurosurgery*, leaders in the concussion field explained that the study by UPMC was flawed in that, among other issues, it discounted low impact hits, did not account for the relatively older population wearing the Revolution Helmets, and did not account for the age-related deterioration of non-Revolution Helmets in the study many of which were older reconditioned helmets. The study included no youth football participants whatsoever, as it involved only high-school football players. Because of these failings, the study did not demonstrate that Revolution Helmets reduced the risk of concussions.

12.      Despite the lack of evidence that the Revolution Helmet reduced the overall risk of concussion more than other helmets, Riddell continued to sell, market, and distribute the Revolution Helmets with the promise of "concussion reduction."

13.      Particularly troubling is the fact that Riddell touted the Revolution Helmet as safer for youth players, when in fact Riddell never tested the helmet on youth players.

14.      Throughout the Class Period, Riddell has marketed and advertised the Revolution Helmet as significantly reducing the risk of concussion. Specifically, Riddell,

4

directly and through distributors and retailers, utilized the following representations, *inter alia*, to market the Revolution Helmet:

      a.    "Shown to reduce incidence of concussion by 31% compared to traditional helmets, the [helmet] utilizes an exclusive Revolution Concussion Reduction Technology that provides superior protection for players on the field."

      b.    "Riddell's exclusive Concussion Reduction Technology protects young athletes against concussions and impact."

      c.    "The most advanced piece of modern concussion prevention in the game today!"

      d.    "Safer, more protective, and advanced frontal helmet protection designed to reduce concussions."

      e.    "All Riddell Concussion Reduction technologies specifically designed to cushion the head, absorb impact, and reduce the risk of concussions by 31%, when compared to a traditional helmet."

      f.    "Riddell Revolution CRT (Concussion Reduction Technology): Research shows a 31% reduction in concussions when used versus a traditionally designed helmet."

      g.    "Riddell CRT (Concussion Reduction Technology) to keep young players safe on the field."

      h.    "Riddell's Concussion Reduction Technology provides increased protection against concussions and impact."

15.     Despite Riddell's representations to the contrary, there is no material difference in the Revolution and other football helmets in regard to concussion prevention, no 31% reduction as Riddell claimed. Scientific studies show that the brand of football helmet makes no material difference in a player's risk of concussion and that high tech helmets like the Revolution do not reduce concussion risk for players any more effectively than low-cost helmets.

16.     Riddell failed to disclose that the Revolution Helmets provide no material reduction in the risk of a concussion. Coupled with the affirmative misstatements, Riddell's failure to disclose that there is no material difference in concussion reduction misled reasonable consumers.

17.     Because Riddell's claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the Revolution Helmet will reduce concussions, and may do so by 31%. This allowed Riddell to charge a premium price for the Revolution Helmet, reflecting the illusory safety benefit.

18.     As a result of Riddell's deceptive marketing, consumers in West Virginia were exposed to Riddell's misleading representations and purchased Revolution Helmets at market prices reflecting these helmets' alleged concussion reducing benefits rather than at the lower market price that would have existed with truthful information about the Revolution Helmet product. All of these West Virginia consumers who purchased a Revolution Helmet have been injured by Riddell's wrongful conduct through the inflated market price.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this class action on behalf of himself and all others similarly situated in West Virginia as members of a proposed Class defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present (the "Class Period").

Excluded from the Class are the following:

a.      Defendant and any of its officers, directors, and employees, and any person or entities that has already settled or otherwise compromised similar claims against the defendant;

b.      Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

c.      Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

20.     This action is brought and may properly be maintained as a class action pursuant to West Virginia Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

21.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of class members is currently unknown and can only

7

be ascertained through appropriate discovery, Plaintiff alleges that the Class includes at least several dozen members.

22.      Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

      a.      Whether Defendant's representations regarding the helmet were false and misleading or reasonably likely to deceive;

      b.      Whether Defendant had adequate substantiation for its claims prior to making them;

      c.      Whether Defendant's helmet reduces the risk of concussion by 31%, a material amount, or at all;

      d.      Whether Defendant's failure to disclose that the helmet did not reduce the risk of concussion compared to other helmets would mislead a reasonable consumer;

      e.      Whether Defendant charged a market price for the helmet reflecting the illusory safety benefit;

      f.      Whether Defendant engaged in unfair, unlawful, or deceptive business practices regarding its helmet in violation of the WVCCPA;

      g.      Whether Defendant's conduct alleged herein constitutes false advertising in violation the WVCCPA;

8

h.    Whether Defendant represented, through its words or conduct, that the

helmet had characteristics, uses, or benefits that it did not actually

have in violation of the WVCCPA;

i.    Whether Plaintiff and the Class have been damaged by the wrongs

complained of herein, and if so, whether Plaintiff and the Class are

entitled to equitable relief, actual damages, statutory damages, or other

relief, and the nature and amount of such relief.

23.    Plaintiff's claims are typical of the Class members' claims. Defendant's

common course of conduct caused Plaintiff and all Class members the same harm.

Defendant's conduct caused each Class member's economic losses. Likewise, Plaintiff and

other Class members must prove the same facts in order to establish the same claims.

24.    Plaintiff is an adequate Class representative because it is a member of the

class it seeks to represent and its interests do not conflict with other Class members' interests.

Plaintiff retained counsel competent and experienced in consumer protection class actions,

and Plaintiff and its counsel intend to prosecute this action vigorously for the class's benefit.

Plaintiff and its counsel will fairly and adequately protect Class interests.

25.    The Class may be properly maintained under Rule 23(b)(2). Defendant has

acted or refused to act, with respect to some or all issues presented in this Complaint, on

grounds generally applicable to the Class, thereby making appropriate final injunctive relief

with respect to the Class as a whole.

26.    The Class can be properly maintained under Rule 23(b)(3). A class action is

superior to other available methods for the fair and efficient adjudication of this litigation

9

because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, it would be unduly burdensome on the court system for the many class members' individual cases to proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it would require individual resolution of common legal and factual questions. By contrast, the class action device presents fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>COUNT ONE</u>
**Violation of the West Virginia Consumer Credit and Protection Act**

27.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Complaint.

28.     The WVCCPA prohibits unfair, deceptive and fraudulent acts or practices in order to protect the public. W. Va. Code § 46A-6-101, -104.

29.     Riddell marketed the Revolution Helmets as reducing the risk of concussion in comparison with other helmets, and by up to 31%, when the Revolution Helmet did not in fact provide this benefit. Riddell knew these statements were false because, among other reasons, it was told so by impartial scientists and the flawed study upon which the concussion reduction statement was based was written in part by one of Riddell's own employees. In particular, there was no evidence as to the effectiveness of the helmet for youth players, as the flawed study which Riddell cited evaluated only high school players.

10

30.     Riddell, in actively marketing this illusory benefit, intended that consumers would rely on the false information in the marketing when making a determination about what helmet to buy.

31.     The effect of Riddell's marketing was to allow Riddell to charge a premium price for the Revolution Helmet.

32.     Riddell's conduct is an unfair and deceptive act or practice. *See, e.g., id.* at § 46A-6-102(7)(E), (M).

33.     Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).

34.     Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct. *Id.* at § 46A-6-106(a).

### PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendant as follows:

a.      An Order certifying the proposed Class under Rule 23 of the West Virginia Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b.      A declaration that Defendant has engaged in the illegal conduct described herein;

11

c.      An Order awarding declaratory and injunctive relief as permitted by law or

equity, including permanently enjoining Defendant from continuing its

unlawful practices as set forth herein;

d.      A judgment awarding Plaintiff and the Class actual damages or the WVCCPA

statutory penalty, whichever is greater;

e.      Ordering Defendant to engage in a corrective advertising campaign;

f.      Awarding attorney fees and costs incurred in prosecuting this action;

g.      Pre-judgment and post-judgment interest; and

h.      All other relief that the Court deems necessary, just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: December 2, 2014

Michael Murphy w/permission by Isaac Forman
Michael Murphy
Bailey & Glasser LLP
910 17th St. NW, Suite 800
Washington, DC 20006
202-463-2101(phone)
202-463-2103(fax)
mmurphy@baileyglasser.com

Marc Weintraub
Bailey & Glasser LLP
209 Capitol St.
Charleston, WV 25301
304-345-6555(phone)
304-342-1110(fax)
mweintraub@baileyglasser.com

Attorneys for Plaintiff

12

# EXHIBIT

# A

# BAILEY GLASSER LLP

910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: 202.463.2101
Fax: 202.463.2103

Michael L. Murphy
mmurphy@baileyglasser.com

<u>SENT VIA U.S. CERTIFIED MAIL</u>

October 10, 2014

Riddell, Inc.
669 Sugar Lane
Elyria, OH 44035
CERTIFIED MAIL # 7013 3020 0000 7168 5449

All American Sports Corporation d/b/a Riddell/All American
669 Sugar Lane
Elyria, OH 44035
CERTIFIED MAIL # 7013 3020 0000 7168 5258

Riddell Sports Group, Inc.
6255 N. State Highway, #300
Irving, Texas 76038
CERTIFIED MAIL # 7013 3020 0000 7168 5265

Easton Bell Sports, Inc.
7855 Haskell Avenue
Van Nuys, California 91406
CERTIFIED MAIL # 7013 3020 0000 7168 5272

RBG Holdings Corporation
7855 Haskell Avenue
Van Nuys, California 91406
CERTIFIED MAIL # 7013 3020 0000 7168 5289

EB Sports Corporation
7855 Haskell Avenue
Van Nuys, California 91406
CERTIFIED MAIL # 7013 3020 0000 7168 5296

Easton Bell Sports, LLC
152 West 57th Street
New York, New York 10019
CERTIFIED MAIL # 7013 3020 0000 71685302

Alabama  Delaware  Illinois  Massachusetts  New Jersey  New York  Washington, D.C.  West Virginia | baileyglasser.com

734330

October 10, 2014
Riddell, Inc., *et al.*
Page 2

To Whom It May Concern:

My law firm represents Midwestern Midget Football Club, Inc. in claims arising out of your practices related to the marketing of the Riddell Revolution football helmets.to customers in the State of West Virginia. Under West Virginia Code § 46A-6-106, I write to provide Riddell, Inc., All American Sports Corporation, and the other identified defendants listed in the attached draft Complaint with an opportunity to cure these violations.

As set forth in the draft Complaint, my client believes that the identified defendants conducted themselves in a manner that amounts to unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce under West Virginia Code § 46A-6-104. You marketed these helmets as safer than other helmets, even quantifying the percentage of improvement, and for youth athletes like those participating in our football club. We paid a price for your helmets and for refurbishing your helmets that reflected your marketing claims, but those claims were not true. My client seeks compensation and statutory penalties for itself and for all West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia within the statutory period.

Should you wish to make a cure offer, please contact me within twenty (20) days upon receipt of this letter in accordance with West Virginia Code § 46A-6-106.

Thank you for your attention to this matter. Feel free to contact me at (202) 463-2101 if you have any further questions.

Sincerely,

Michael L. Murphy
BAILEY GLASSER LLP
Counsel for Midwestern Midget
Football Club, Inc.

# EXHIBIT B

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



USPS CERTIFIED MAIL™

9214 8901 1251 3410 0000 5111 65



**Natalie E. Tennant**
Secretary Of State
State Of West Virginia
Phone:  304-558-6000
866-767-8683
Visit us online:
www.wvsos.com

RIDDELL, INC.
669 SUGAR LN
ELYRIA, OH 44035-6309

Control Number: 47425

Defendant: RIDDELL, INC.
669 SUGAR LN
ELYRIA, OH 44035-6309 US

County: Kanawha

Civil Action: 14-C-2112

Certified Number: 92148901125134100000511165

Service Date: 12/19/2014

I am enclosing:

1 summons and complaint

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any
questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the
Secretary of State's office.*

Sincerely,

Natalie E. Tennant

Natalie E. Tennant
Secretary of State

# SUMMONS

### In the Circuit Court of Kanawha County, West Virginia

MIDWESTERN MIDGET
FOOTBALL CLUB INC.,

    Plaintiff,

v.

RIDDELL, INC.,

    Defendant.

CASE NO.: 14-C-2112

Riddell, Inc.
669 Sugar Lane
Elyria, Ohio 44035

To The Above Named Defendant(s):

  IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby
summoned and required to serve upon **Michael Murphy and Marc Weintraub,**
Attorneys at Law and the law firm **Bailey & Glasser, LLP,** Plaintiffs' attorneys, whose address
is **209 Capitol Street, Charleston, West Virginia 25301,** an answer, including any related
counterclaim you may have, to the complaint filed against you in the above-styled action, a true
copy of which is herewith delivered to you. You are required to serve your answer **within 30
days** after service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the complaint and you
will be thereafter barred for asserting in another action any claim you may have asserted by
counterclaim in the above-styled civil action.

Dated: December 2, 2014

      **Cathy S. Gatson, Clerk**

      Clerk of Court by: Catkins

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| MIDWESTERN MIDGET FOOTBALL CLUB INC., | ) ) ) | CASE NO.: 2:14-cv-14634 |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| RIDDELL, INC. | ) ) | |
| Defendant. | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1.     Plaintiff Midwestern Midget Football Club, Inc., a non-profit youth football organization, purchased Riddell Revolution football helmets ("Revolution Helmets"). Defendant Riddell, Inc. is involved, *inter alia*, in the design, manufacture, marketing, and sale of the Revolution Helmets.  Riddell sells Revolution Helmets at a market price reflecting marketing claims that the helmets reduce the incidence of concussion in comparison with its own, earlier helmet designs and helmets of competitors. In particular, the Revolution Helmets were marketed as containing "concussion reduction technology" which reduces the incidence of concussion by up to "31%."

2.     These marketing statements were knowingly false.  Riddell's assertions were based upon a statistically unsound study paid for by Riddell and co-authored by a Riddell employee, and publically criticized by third-party scientists.  Scientific studies and other data of which Riddell was aware indicate that the Revolution Helmets make no difference to a player's risk for concussion as compared to other traditional football helmets.

3.       Unfortunately, this marketing was successful.  Plaintiff and others purchased

Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of

concussion in comparison with other helmets.  Plaintiff now sues Riddell on its own behalf

and on behalf of a class for violating the West Virginia Consumer Credit and Protection Act

("WVCCPA"), seeking injunctive relief, the greater of actual damages or statutory damages,

and attorney's fees and costs.

**JURISDICTION AND VENUE**

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)

because the Plaintiff is diverse from Defendant and the amount in controversy exceeds

$75,000, exclusive of interests and costs.  This Court has subject matter jurisdiction pursuant

to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000 exclusive of

interest and costs, there are more than one hundred Class members, and minimal diversity

exists because Plaintiff and the members of the Class are citizens of a different state than the

Defendant.

5.       This Court has personal jurisdiction over Defendant because Defendant has

sufficient minimum contacts with West Virginia through its marketing and sale of Revolution

Helmets in West Virginia.

6.       Venue is proper under 28 U.S.C. § 1391(a) because (1) Defendant is subject to

personal jurisdiction in this District, and (2) a substantial part of the events or omissions

giving rise to Plaintiff's claims occurred in this District.  Defendant engaged in the

promotion and sale of the Revolution Helmets in this District, and Plaintiff is a resident of

this District and purchased Revolution Helmets in this District.

PARTIES

7.     Plaintiff Midwestern Midget Football Club Inc. ("Midwestern Football") is a youth football organization, operating in Kanawha County, West Virginia and a citizen of West Virginia.  Approximately 150 youths participate in the program every year. Midwestern Football supplies the helmets for these participants.  Each year, Midwestern Football purchases between 12 and 24 new Riddell Revolution Helmets.  Older helmets are refurbished when appropriate, and Midwestern Football sends older Riddell Revolution Helmets to defendant All American Sports Corporation for refurbishing.  Midwestern Football purchases Revolution Helmets and arranges for the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia.

8.     Defendant Riddell, Inc. is a subsidiary corporation of Riddell Sports Group, Inc., organized and existing under the laws of the State of Illinois with a principal place of business in the State of Illinois.  Riddell, Inc. is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution Helmets. This defendant ships its products, including Revolution Helmets, to purchasers and distributors in West Virginia, maintains a direct sales force in West Virginia, sells its products in retail stores in West Virginia, and advertises its products in West Virginia. Riddell, Inc. is a subsidiary of Riddell Sports Group, Inc.  Through a corporate sibling, All American Sports Corporation, it is engaged in the reconditioning of Riddell helmets, including Revolution Helmets, and related marketing, in West Virginia.

3

## FACTS

9.        Riddell has engaged in the design, development, manufacture, sale, and distribution of football equipment, including helmets, since 1922.

10.        In or about 2000, while Riddell was designing and developing the Revolution Helmet, Biokenetics, a biomechanics firm hired by the NFL and later retained by Riddell, sent Riddell a report showing that no football helmet, no matter how revolutionary, could prevent concussions.

11.        In 2002, Riddell introduced for sale the first versions of the Riddell Revolution Helmet, which Riddell manufactured, sold, and distributed.  Riddell claimed that the Revolution Helmet was designed to reduce the risk of concussion.

12.        In 2002, Riddell provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for a study comparing rates of concussions among high school athletes who wore Revolution Helmets with those who wore traditional helmets.

13.        Riddell used the results of this study to claim that the Revolution Helmet reduced concussions by 31%, despite UPMC's recommendation that Riddell not make such claims and peer reviewed comments expressing concerns that the study suffered "serious, if not fatal, methodological flaws."  In the *Journal of Neurosurgery*, leaders in the concussion field explained that the study by UPMC was flawed in that, among other issues, it discounted low impact hits, did not account for the relatively older population wearing the Revolution Helmets, and did not account for the age-related deterioration of non-Revolution Helmets in the study many of which were older reconditioned helmets.  The study included no youth football participants whatsoever, as it involved only high school football players.  Because of

4

these failings, the study did not demonstrate that Revolution Helmets reduced the risk of concussions.

14.     Despite the lack of evidence that the Revolution Helmet reduced the overall risk of concussion more than other helmets, Riddell continued to sell, market, and distribute the Revolution Helmets with the promise of "concussion reduction."

15.     Particularly troubling is the fact that Riddell touted the Revolution Helmet as safer for youth players, when in fact Riddell never tested the helmet on youth players.

16.     Throughout the Class Period, Riddell has marketed and advertised the Revolution Helmet as significantly reducing the risk of concussion.  Specifically, Riddell, directly and through distributors and retailers, utilized the following representations, *inter alia*, to market the Revolution Helmet:

        a.     "Shown to reduce incidence of concussion by 31% compared to traditional helmets, the [helmet] utilizes an exclusive Revolution Concussion Reduction Technology that provides superior protection for players on the field."

        b.     "Riddell's exclusive Concussion Reduction Technology protects young athletes against concussions and impact."

        c.     "The most advanced piece of modern concussion prevention in the game today!"

        d.     "Safer, more protective, and advanced frontal helmet protection designed to reduce concussions."

e.    "All Riddell Concussion Reduction technologies specifically designed to cushion to head, absorb impact, and reduce the risk of concussions by 31%, when compared to a traditional helmet."

f.    "Riddell Revolution CRT (Concussion Reduction Technology): Research shows a 31% reduction in concussions when used versus a traditionally designed helmet."

g.    "Riddell CRT (Concussion Reduction Technology) to keep young players safe on the field."

h.    "Riddell's Concussion Reduction Technology provides increased protection against concussions and impact."

17.    Despite Riddell's representations to the contrary, there is no material difference in the Revolution and other football helmets in regard to concussion prevention, and certainly not a 31% reduction as claimed.  Scientific studies show that the brand of football helmet makes no difference in a player's risk of concussion and that high tech helmets like the Revolution do not reduce concussion risk for players any more effectively than low-cost helmets.

18.    Riddell failed to disclose that the Revolution Helmets provide no material reduction in the risk of a concussion.  Coupled with the affirmative misstatements, Riddell's failure to disclose that there is no material difference in concussion reduction misled reasonable consumers.

6

19.     Because Riddell's claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the Revolution Helmet will reduce concussions, and may do so by 31%.

20.     As a result of Riddell's deceptive marketing, consumers in West Virginia were exposed to Riddell's misleading representations and purchased Revolution Helmets at market prices reflecting these helmets' alleged concussion reducing benefits rather than a market price based on truthful information about the Revolution Helmet product.  These consumers, including Plaintiff, did not receive the promised benefits.  All of these West Virginia consumers who purchased a Revolution Helmet have been injured by Riddell's wrongful conduct.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action on behalf of himself and all others similarly situated in West Virginia as members of a proposed Class defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present (the "Class Period").

Excluded from the Class are the following:

a.     Defendant and any of its officers, directors, and employees, and any person or entities that has already settled or otherwise compromised similar claims against the defendant;

b.     Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

c.     Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

22.     This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

23.     The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff alleges that the Class includes thousands of members.

24.     Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

a.     Whether Defendant's representations regarding the helmet were false and misleading or reasonably likely to deceive;

b.     Whether Defendant had adequate substantiation for its claims prior to making them;

c.    Whether Defendant's failure to disclose that the helmet did not reduce the risk of concussion compared to other helmets would mislead a reasonable consumer;

d.    Whether Defendant's helmet reduces the risk of concussion by 31%, a material amount, or at all;

e.    Whether Defendant charged a price premium for the helmet;

f.    Whether Defendant engaged in unfair, unlawful, or deceptive business practices regarding its helmet in violation of the WVCCPA;

g.    Whether Defendant's conduct alleged herein constitutes false advertising in violation the WVCCPA;

h.    Whether Defendant represented, through its words or conduct, that the helmet had characteristics, uses, or benefits that it did not actually have in violation of the WVCCPA;

i.    Whether Plaintiff and the Class have been damaged by the wrongs complained of herein, and if so, whether Plaintiff and the Class are entitled to equitable relief, actual damages, statutory damages, or other relief, and the nature and amount of such relief.

25.    Plaintiff's claims are typical of the Class members' claims. Defendant's common course of conduct caused Plaintiff and all Class members the same harm. Defendant's conduct caused each Class member's economic losses. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

26.      Plaintiff is an adequate Class representative because it is a member of the class it seeks to represent and its interests do not conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and its counsel intend to prosecute this action vigorously for the class's benefit. Plaintiff and its counsel will fairly and adequately protect Class interests.

27.      The Class may be properly maintained under Rule 23(b)(2).  Defendant has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

28.      The Class can be properly maintained under Rule 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, it would be unduly burdensome on the court system for thousands of individual cases to proceed.  Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it would require individual resolution of common legal and factual questions. By contrast, the class action device presents fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>COUNT ONE</u>
**Violation of the West Virginia Consumer Credit and Protection Act**

29.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Complaint.

30.     The WVCCPA prohibits unfair, deceptive and fraudulent acts or practices in order to protect the public.  W. Va. Code § 46A-6-101, -104.

31.     Riddell marketed the Revolution Helmets as reducing the risk of concussion in comparison with other helmets, and by up to 31%, when the Revolution Helmet did not in fact provide this benefit.  Riddell knew these statements were false because, among other reasons, it was told so by impartial scientists and the flawed study upon which the concussion reduction statement was based was written in part by one of Riddell's own employees.  In particular, there was no evidence as to the effectiveness of the helmet for youth players, as the flawed study which Riddell cited evaluated only high school players.

32.     Riddell, in actively marketing this illusory benefit, intended that consumers would rely on the false information in the marketing when making a determination about what helmet to buy.

33.     Riddell's conduct is an unfair and deceptive act or practice.  *See, e.g.*, *id.* at § 46A-6-102(7)(E), (M).

34.     Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).

35.     Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct.  *Id.* at § 46A-6-106(a).

11

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendant as follows:

a.   An Order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b.   A declaration that Defendant has engaged in the illegal conduct described herein;

c.   An Order awarding declaratory and injunctive relief as permitted by law or equity, including permanently enjoining Defendant from continuing its unlawful practices as set forth herein;

d.   A judgment awarding Plaintiff and the Class actual damages or the WVCCPA statutory penalty, whichever is greater;

e.   Ordering Defendant to engage in a corrective advertising campaign;

f.   Awarding attorney fees and costs incurred in prosecuting this action;

g.   Pre-judgment and post-judgment interest; and

h.   All other relief that the Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 1, 2014

/s/Michael Murphy
Michael Murphy
Bailey & Glasser LLP
910 17th St. NW, Suite 800
Washington, DC  20006
202-463-2101(phone)
202-463-2103(fax)
mmurphy@baileyglasser.com

Marc Weintraub
Bailey & Glasser LLP
209 Capitol St.
Charleston, WV  25301
304-345-6555(phone)
304-342-1110(fax)
mweintraub@baileyglasser.com

Attorneys for Plaintiff