IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| MIDWESTERN MIDGET<br>FOOTBALL CLUB INC.,<br><br>Plaintiff,<br><br>v.<br><br>RIDDELL, INC.,<br><br>Defendant. | CASE NO.: 2:15-cv-00244<br>Hon. John T. Copenhaver<br><br><br>JURY TRIAL DEMANDED |

## AMENDED CLASS ACTION COMPLAINT[1]

1.  Plaintiff Midwestern Midget Football Club, Inc., a non-profit youth football organization, purchased Riddell Revolution football helmets ("Revolution Helmets"). Youth football participants are age 14 or younger. Defendant Riddell, Inc. is involved, *inter alia*, in the design, manufacture, marketing, and sale of the Revolution Helmets. Riddell sells Revolution Helmets at a market price reflecting marketing claims that the helmets reduce the incidence of concussion in comparison with its own, earlier helmet designs and helmets of competitors. In particular, the Revolution Helmets were marketed as containing "concussion reduction technology" which reduces the incidence of concussion by up to "31%."

2.  These marketing statements were knowingly false. Riddell's assertions were based upon a statistically unsound study paid for by Riddell and co-authored by a Riddell employee, and publically criticized by third-party scientists. Scientific studies and other data

---

[1] The following amendment is submitted in accordance with the Court's Order of March 23, 2015 (Dkt. No. 18).

of which Riddell was aware indicate that the Revolution Helmets make no material difference to a player's risk for concussion as compared to other traditional football helmets.

3. Unfortunately, this marketing was successful. Plaintiff and others purchased Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of concussion in comparison with other helmets. Plaintiff now sues Riddell on its own behalf and on behalf of a class for violating the West Virginia Consumer Credit and Protection Act ("WVCCPA"), seeking injunctive relief, the greater of actual damages or statutory damages, and attorney's fees and costs.

## WEST VIRGINIA CODE § 46A-6-106

4. On October 10, 2014, Plaintiff sent Defendant Riddell, Inc. a "cure letter" pursuant to West Virginia Code § 46A-6-106 via United States Certified Mail (7013 3020 0000 7168 5449). Plaintiff did not receive a response to this letter.

## PARTIES

5. Plaintiff Midwestern Midget Football Club Inc. ("Midwestern Football") is an incorporated non-profit youth football organization, operating in Kanawha County, West Virginia and a citizen of West Virginia. Approximately 150 youths participate in the program every year. Midwestern Football supplies the helmets for these participants. Each year, Midwestern Football purchases between 12 and 24 new Riddell Revolution Helmets. Older helmets are refurbished when appropriate, and Midwestern Football sends older Riddell Revolution Helmets to All American Sports Corporation for refurbishing. Midwestern Football purchases Revolution Helmets and the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia.

6. Defendant Riddell, Inc. is a subsidiary corporation of Riddell Sports Group, Inc., organized and existing under the laws of the State of Illinois with a principal place of business in the State of Illinois. Riddell, Inc. is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution Helmets. This defendant ships its products, including Revolution Helmets, to purchasers and distributors in West Virginia, maintains a direct sales force in West Virginia, sells its products in retail stores in West Virginia, and advertises its products in West Virginia. Riddell, Inc. is a subsidiary of Riddell Sports Group, Inc. Through a corporate sibling, All American Sports Corporation, it is engaged in the reconditioning of Riddell helmets, including Revolution Helmets, and related marketing in West Virginia.

## FACTS

7. Riddell has engaged in the design, development, manufacture, sale, and distribution of football equipment, including helmets, since 1922.

8. In or about 2000, while Riddell was designing and developing the Revolution Helmet, Biokenetics, a biomechanics firm hired by the NFL and later retained by Riddell, sent Riddell a report showing that no football helmet, no matter how revolutionary, could prevent concussions.

9. In 2002, Riddell introduced for sale the first versions of the Riddell Revolution Helmet, which Riddell manufactured, sold, and distributed. Riddell claimed that the Revolution Helmet was designed to reduce the risk of concussion.

10. In 2002, Riddell provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for a study comparing rates of concussions among high school athletes who wore Revolution Helmets with those who wore traditional helmets.

11. Riddell used the results of this study to claim that the Revolution Helmet reduced concussions by 31%, despite UPMC's recommendation that Riddell not make such claims and peer reviewed comments expressing concerns that the study suffered "serious, if not fatal, methodological flaws." In the *Journal of Neurosurgery*, leaders in the concussion field explained that the study by UPMC was flawed in that, among other issues, it discounted low impact hits, did not account for the relatively older population wearing the Revolution Helmets, and did not account for the age-related deterioration of non-Revolution Helmets in the study many of which were older reconditioned helmets. The study included no youth football participants whatsoever, as it involved only high-school football players. Because of these failings, the study did not demonstrate that Revolution Helmets reduced the risk of concussions.

12. Despite the lack of evidence that the Revolution Helmet reduced the overall risk of concussion more than other helmets, Riddell continued to sell, market, and distribute the Revolution Helmets with the promise of "concussion reduction."

13. Particularly troubling is the fact that Riddell touted the Revolution Helmet as safer for youth players, when in fact Riddell never tested the helmet on youth players.

14. Riddell reportedly employs "Over 250 Representatives Nationwide," including in West Virginia. *See* Riddell Find a Representative, *available at*

4

http://team.riddell.com/find-a-rep/ (last visited Apr. 7, 2015). Sales representatives are provided with marketing materials and supply catalogs aimed at youth football leagues.

15. Riddell has aggressively marketed the Revolution helmet to youth football leagues through sponsorships and targeted programs.

16. For instance, Riddell previously announced that it signed on as the "Official Hardgoods Supplier of American Youth Football (AYF), the largest youth football organization in the U.S. Under the agreement, Riddell helmets and shoulder pads will be available to some 500,000 youth members of the organization."

17. Riddell also teamed up with USA Football to establish the Refer-a-Friend program that gave families the opportunity to obtain a Riddell Revolution helmet by referring a friend to the Player Academy.[2]

18. Throughout the Class Period, Riddell has marketed and advertised the Revolution Helmet as significantly reducing the risk of concussion. The following are specific examples of marketing statements Riddell has made, and continues to publicly endorse through inclusion on its website, promoting this purported concussion reducing benefit:

> a. "Shown to reduce incidence of concussion by 31% versus traditional helmets* [Neurosurgery, February 2006, Vol. 58, No.2], the helmet's Revolution Concussion Reduction Technology uses three principal design elements – an offset shell, mandible extensions and energy

---

[2] USA Football describes itself as "the sport's national governing body, leading the game's development for youth, high school and other amateur players. The independent nonprofit partners with leaders in medicine, child advocacy and sport to establish important standards rooted in education. USA Football advances coaching education and player skill development for safer play and positive experiences through athletics." See USA Football, About Us, available at http://usafootball.com/about-us (last visited Apr. 7, 2015).

5

      managing S-Pads – to provide superior protection for players on the field."[3]

  b. "In relative terms, athletes who wore the Riddell Revolution were 31 percent less likely to suffer a concussion compared to athletes who wore traditional or standard football helmets. For athletes who had never suffered a previous concussion, wearing the Riddell Revolution decreased their relative risk of concussion by 41 percent. Both of these findings were statistically significant.[4]

  c. "The study, which will be published in February's edition of Neurosurgery, found that athletes who wore the Riddell Revolution helmet were 31 percent less likely to suffer a concussion compared to athletes who wore traditional football helmets. The authors of the study estimate that the Revolution's patented technology could translate to 18,000 to 46,000 fewer concussions among the 1.5 million high school players who participate in football each season. While these results are very encouraging, Riddell stresses that no helmet will prevent all concussions."[5]

19. The statements described with specificity in Paragraph 18 above are all currently available on www.Riddell.com, a website controlled by Defendant.

20. The following are specific examples of the text contained in full-page advertisements Riddell placed in USA Football's member magazine:

---

[3] *See* Riddell's Latest Innovation In Protection – The Riddell Revolution Speed Helmet – Gains Momentum at Top Division I Football Programs (Nov. 8, 2008), *available at* http://news.riddell.com/info/releases/riddells-latest-innovation-in-protection-the-riddell-revolution-speed-helmet-gains-momentum-at-top-division-i-football-programs (last visited Apr. 7, 2015).

[4] *See* Neurosurgery Study: Research Has Shown a Reduction in the Risk of Concussion in Players Wearing Riddell Revolution Helmets When Compared to Traditionally Designed Helmets (Feb. 1, 2006), *available at* http://news.riddell.com/info/releases/neurosurgery-study:-research-has-shown-a-reduction-in-the-risk-of-concussion-in-players-wearing-riddell-revolution-helmets-when-compared-to-traditionally-designed-helmets (last visited Apr. 7, 2015).

[5] *See* Research Shows Riddell Revolution Football Helmet Provides Better Protection Against Concussions (Jan. 9, 2006), *available at* http://news.riddell.com/info/releases/research-shows-riddell-revolution-football-helmet-provides-better-protection-against-concussions (last visited Apr. 7, 2015).

        a.      "DEMAND REVOLUTION CONCUSSION REDUCTION TECHNOLOGY. RESEARCH SHOWS A 31% REDUCTION IN THE RISK OF CONCUSSION IN PLAYERS WEARING RIDELL REVOLUTION HELMETS WHEN COMPARED TO TRADITIONALLY DESIGNED HELMETS."[6]

        b.      "RESEARCH SHOWS A 31% REDUCTION IN THE RISK OF CONCUSSION IN PLAYERS WEARING RIDDELL REVOLUTION HELMETS."[7]

21.       Despite Riddell's representations to the contrary, there is no material difference in the Revolution and other football helmets in regard to concussion prevention, no 31% reduction as Riddell claimed. Scientific studies show that the brand of football helmet makes no material difference in a player's risk of concussion and that high tech helmets like the Revolution do not reduce concussion risk for players any more effectively than low-cost helmets.

22.       Riddell failed to disclose that the Revolution Helmets provide no material reduction in the risk of a concussion. Coupled with the affirmative misstatements, Riddell's failure to disclose that there is no material difference in concussion reduction misled reasonable consumers.

23.       Because Riddell's claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the

---

[6] *See* USA Football Magazine, Advertisement for Riddell Revolution Speed Youth, Revolution Edge Youth, Revolution Youth, Attack Youth Helmets, p.11, Summer 2010 (all caps in original); *see also* USA Football Magazine, Advertisement for Riddell Revolution Speed Youth, Revolution Edge Youth, Revolution Youth, Attack Youth Helmets, p.11, Fall 2010 (all caps in original).

[7] *See* USA Football Magazine, Advertisement for "Riddell Revo Speed Youth" helmet, USA Football Magazine, p.35, Summer 2009 (all caps in original).

7

Revolution Helmet will reduce concussions, and may do so by 31%. This allowed Riddell to charge a premium price for the Revolution Helmet, reflecting the illusory safety benefit.

24. As a result of Riddell's deceptive marketing, consumers in West Virginia were exposed, and continue to be exposed, to Riddell's misleading representations and purchased Revolution Helmets at market prices reflecting these helmets' alleged concussion reducing benefits rather than at the lower market price that would have existed with truthful information about the Revolution Helmet product. All of these West Virginia consumers who purchased a Revolution Helmet have been injured by Riddell's wrongful conduct through the inflated market price.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this class action on behalf of himself and all others similarly situated in West Virginia as members of a proposed Class defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present (the "Class Period").

> Excluded from the Class are the following:

> > a. Defendant and any of its officers, directors, and employees, and any person or entities that have already settled or otherwise compromised similar claims against the defendant;

> > b. Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

> > c. Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

26. This action is brought and may properly be maintained as a class action pursuant to West Virginia Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

27. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff alleges that the Class includes at least several dozen members.

28. Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

   a. Whether Defendant's representations regarding the helmet were false and misleading or reasonably likely to deceive;

   b. Whether Defendant had adequate substantiation for its claims prior to making them;

   c. Whether Defendant's helmet reduces the risk of concussion by 31%, a material amount, or at all;

   d. Whether Defendant's failure to disclose that the helmet did not reduce the risk of concussion compared to other helmets would mislead a reasonable consumer;

   e. Whether Defendant charged a market price for the helmet reflecting the illusory safety benefit;

   f. Whether Defendant engaged in unfair, unlawful, or deceptive business practices regarding its helmet in violation of the WVCCPA;

   g. Whether Defendant's conduct alleged herein constitutes false advertising in violation the WVCCPA;

      h.     Whether Defendant represented, through its words or conduct, that the helmet had characteristics, uses, or benefits that it did not actually have in violation of the WVCCPA;

      i.     Whether Plaintiff and the Class have been damaged by the wrongs complained of herein, and if so, whether Plaintiff and the Class are entitled to equitable relief, actual damages, statutory damages, or other relief, and the nature and amount of such relief.

29.      Plaintiff's claims are typical of the Class members' claims. Defendant's common course of conduct caused Plaintiff and all Class members the same harm. Defendant's conduct caused each Class member's economic losses. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

30.      Plaintiff is an adequate Class representative because it is a member of the class it seeks to represent and its interests do not conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and its counsel intend to prosecute this action vigorously for the class's benefit. Plaintiff and its counsel will fairly and adequately protect Class interests.

31.      The Class may be properly maintained under Rule 23(b)(2). Defendant has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

32.      The Class can be properly maintained under Rule 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, it would be unduly burdensome on the court system for the many class members' individual cases to proceed. Individual

litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it would require individual resolution of common legal and factual questions. By contrast, the class action device presents fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE
### Violation of the West Virginia Consumer Credit and Protection Act

33. Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Complaint.

34. The WVCCPA prohibits unfair and deceptive acts or practices in order to protect the public. W. Va. Code § 46A-6-101, -104.

35. Riddell marketed the Revolution Helmets as reducing the risk of concussion in comparison with other helmets, and by up to 31%, when the Revolution Helmet did not in fact provide this benefit. Riddell knew these statements were false because, among other reasons, it was told so by impartial scientists and the flawed study upon which the concussion reduction statement was based was written in part by one of Riddell's own employees. In particular, there was no evidence as to the effectiveness of the helmet for youth players, as the flawed study which Riddell cited evaluated only high school players.

36. Riddell, in actively marketing this illusory benefit, intended that consumers would rely on the false information in the marketing when making a determination about what helmet to buy.

11

37. The effect of Riddell's marketing was to allow Riddell to charge a premium price for the Revolution Helmet.

38. Riddell's conduct is an unfair and deceptive act or practice. *See, e.g., id.* at § 46A-6-102(7)(E).

39. Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).

40. Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct. *Id.* at § 46A-6-106(a).

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendant as follows:

a. An Order certifying the proposed Class under Rule 23 of the West Virginia Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b. A declaration that Defendant has engaged in the illegal conduct described herein;

c. An Order awarding declaratory and injunctive relief as permitted by law or equity, including permanently enjoining Defendant from continuing its unlawful practices as set forth herein;

d. A judgment awarding Plaintiff and the Class actual damages or the WVCCPA statutory penalty, whichever is greater;

12


    e.    Ordering Defendant to engage in a corrective advertising campaign;

    f.    Awarding attorney fees and costs incurred in prosecuting this action;

    g.    Pre-judgment and post-judgment interest; and

    h.    All other relief that the Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: April 10, 2015

/s/Michael Murphy
Michael Murphy
Bailey & Glasser LLP
910 17th St. NW, Suite 800
Washington, DC 20006
202-463-2101(phone)
202-463-2103(fax)
mmurphy@baileyglasser.com

Marc Weintraub
Ryan McCune Donovan
Bailey & Glasser LLP
209 Capitol St.
Charleston, WV 25301
304-345-6555(phone)
304-342-1110(fax)
mweintraub@baileyglasser.com
rdonovan@baileyglasser.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **MIDWESTERN MIDGET FOOTBALL CLUB INC.,** | |
| **Plaintiff,** | **CASE NO.: 2:15-cv-00244**<br>**Hon. John T. Copenhaver** |
| v. | |
| **RIDDELL, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**CERTIFICATE OF SERVICE**

The foregoing <u>Amended Class Action Complaint</u> was served on counsel of record through this Court's CM/ECF system on Friday, April 10, 2015.

<div style="text-align:right">

*/s/Ryan M. Donovan*
Ryan M. Donovan
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
304-345-6555 (phone)
304-342-1110 (fax)
rdonovan@baileyglasser.com

</div>