```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                       AT CHARLESTON
```

**MIDWESTERN MIDGET FOOTBALL**
**CLUB INC.,**

      Plaintiff,

v.                                         Civil Action No. 2:15-00244

**RIDDELL, INC.,**

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is a motion to dismiss by defendant Riddell, Inc. ("Riddell"), filed April 27, 2015.

I.

Plaintiff Midwestern Midget Football Club, Inc. ("Midwestern"), is a West Virginia citizen. It is a non-profit youth football organization operating in Kanawha County, West Virginia. Defendant Riddell, Inc. ("Riddell"), is an Illinois citizen that designs, manufactures, markets, and sells a cranial protection device for football players known as the Revolution Helmet.

Riddell sells Revolution Helmets at a market price reflective of its claim that they reduce the incidence of concussion in comparison with its own, earlier helmet designs and competitor helmets. Specifically, the Revolution Helmets were marketed as containing reduction technology that putatively reduced the incidence of concussions by up to 31%.

Approximately 150 youth participate in Midwestern's program every year. It supplies the helmets for these participants. Every year Midwestern purchases between 12 and 24 new Revolution Helmets for its participants who are aged 14 years or younger.

Midwestern asserts that Riddell's marketing claims were knowingly false. Among other things, Midwestern contends that Riddell's assertions were based upon a statistically unsound study paid for by Riddell and co-authored by a Riddell employee. The study was publically criticized by third-party scientists. Indeed, Midwestern alleges that scientific studies and other data of which Riddell was aware indicated that the Revolution Helmets made no material difference to concussion risk as compared to traditional helmets.

On December 2, 2014, Midwestern instituted this action against Riddell on its own behalf, and that of a class of similarly situated consumers, via a single-count claim under the

West Virginia Consumer Credit and Protection Act ("WVCCPA"). The putative class, as set forth in the amended class action complaint ("operative pleading") filed April 10, 2015, is defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present . . . .

(Op. Pldg. ¶ 25).

Midwestern asserts that as a result of Riddell's alleged deceptive marketing, West Virginia consumers were exposed to Riddell's misleading representations. As a result, Midwestern asserts that those same West Virginia customers who purchased Revolution Helmets at certain higher market prices reflecting their alleged concussion-reducing benefits would have, without the false representations, purchased alternative helmets at a lower market price.[1]

---

[1] In its memorandum in support of the motion to dismiss, Riddell offers a number of factual assertions beyond the four corners of the operative pleading. For example, it asserts that (1) a February 2006 article in the Journal of Neurosurgery supports the view that the Revolution Helmet decreased relative concussion risk by 31%, (2) a federal district court in a similar case found, as urged by Riddell, that no genuine issue of fact existed on the question of whether the 31% reduction claim was false or untruthful, (3) the Federal Trade Commission chose not to recommend enforcement action against Riddell surrounding the Revolution Helmet claims, and (4) an April 2014 study by Virginia Tech showed that Revolution Helmets reduced concussion risk. The court must, at this juncture, treat as true the allegations in the operative pleading.

The operative pleading alleges a single count under the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Specifically, it contends that Riddell's marketing efforts were composed of false statements which it intended customers to rely upon when making helmet-purchase decisions. This is alleged to be an unfair and deceptive act or practice in violation of West Virginia Code section 46A-6-102(7)(E). Midwestern additionally alleges as follows:

> Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).
>
> Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct. Id. at § 46A-6-106(a).

The referenced provision of the West Virginia Code, section 46A-6-106(a), provides pertinently as follows:

> Any person who purchases . . . goods . . . and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court . . . .

W. Va. Code § 46A-6-106(a).

Midwestern seeks, inter alia, class certification, declaratory and injunctive relief, and actual damages or a statutory penalty, whichever is greater.

II.

A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

When making an allegation of fraud, more particularity is required.  A plaintiff must meet the heightened pleading requirements set forth in Rule 9.  Rule 9 requires a party to "state with particularity the circumstances constituting [the] fraud." F.R. Civ. P. 9(b).  To satisfy Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008), see also U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013)(noting that the Rule 9 standard set forth in Wilson is "as applicable in cases brought under [the statute at issue in Wilson] as [it is] in other fraud cases")(emphasis added).

**B.    Analysis**

Riddell offers five arguments in support of dismissal. First, it contends that the allegations in the operative pleading fail to show alleged marketing statements that were false or untruthful.  Second, it asserts that Midwestern has failed to demonstrate causation or reliance.  Third, it claims Midwestern alleges no cognizable injury.  Fourth, it asserts the operative pleading does not satisfy the rigors of Rule 9(b).  Fifth, it asserts that Midwestern lacks standing to pursue its WVCCPA claim. The first four contentions are addressed together immediately below in subsection II.B.1 inasmuch as they all relate to satisfactory pleading of a section 46A-6-101 claim.  The standing argument is addressed thereafter.

1. Pleading Under Section 46A-6-106(a)

The necessary elements of proof for the claim pled by Midwestern under WVCCPA section 46A-6-106(a) have been found to be:  "(1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss."  White v. Wyeth, 227 W. Va. 131, 140, 705 S.E.2d 828, 837 (2010).  Additionally, "[w]here the deceptive

conduct or practice alleged involves affirmative misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection." Id.

Riddell recognizes that one species of "unlawful conduct" under the WVCCPA consists of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. Va. Code § 46A-6-104. It also concedes the following qualify as "[u]nfair methods of competition and unfair or deceptive acts or practices[:]"

> "Representing that goods or services have . . . benefits . . . that they do not have . . . ." W. Va. Code § 46A-6-102(7)(E); and

> The act, use or employment . . . of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . . ." W. Va. Code, § 46A-6-102(7)(M).

Riddell contends, however, that the operative pleading fails to allege marketing statements that were false or untruthful. The necessary allegations are apparent. Midwestern asserts in the operative pleading that in 2002 Riddell marketed the Revolution Helmet with the claim that the device was designed to reduce the risk of concussion. Midwestern additionally alleges that the claim was "knowingly false," elaborating as follows:

> The marketing "assertions were based upon a statistically unsound study [apparently conducted by the University of Pittsburgh Medical Center ("UPMC") and]

8

> paid for by Riddell and co-authored by a Riddell employee, and publically criticized by third-party scientists." (Op. Pldg. ¶ 2).
>
> "Scientific studies and other data of which Riddell was aware indicate that the Revolution Helmets make no material difference to a player's risk for concussion as compared to other traditional football helmets." (Id. ¶ 2).
>
> "In the Journal of Neurosurgery, leaders in the concussion field explained that the study by UPMC was flawed in that, among other issues, it discounted low impact hits, did not account for the relatively older population wearing the Revolution Helmets, and did not account for the age-related deterioration of non-Revolution Helmets in the study many of which were older reconditioned helmets. The study included no youth football participants whatsoever, as it involved only high-school football players. Because of these failings, the study did not demonstrate that Revolution Helmets reduced the risk of concussions." (Id. ¶ 11).
>
> "Particularly troubling is the fact that Riddell touted the Revolution Helmet as safer for youth players, when in fact Riddell never tested the helmet on youth players." (Id. ¶ 13).
>
> "Riddell marketed the Revolution Helmets as reducing the risk of concussion in comparison with other helmets, and by up to 31 %, when the Revolution Helmet did not in fact provide this benefit. Riddell knew these statements were false because, among other reasons, it was told so by impartial scientists and the flawed study upon which the concussion reduction statement was based was written in part by one of Riddell's own employees." (Id. ¶ 35).

In addition to these statements, Midwestern also quotes Riddell advertisements touting the concussion-reduction claims. These allegations combine to allege a plausible basis for concluding that Riddell produced false advertising of the benefits of the Revolution Helmet in order to entice customers into

purchasing the devices. This ground for dismissal thus lacks merit.

Next, Riddell claims Midwestern has failed to allege causation or reliance. The operative pleading includes the following:

> "Riddell sells Revolution Helmets at a market price reflecting marketing claims that the helmets reduce the incidence of concussion in comparison with its own, earlier helmet designs and helmets of competitors." (Id. at 1).
>
> "Unfortunately, this marketing was successful. Plaintiff and others purchased Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of concussion in comparison with other helmets." (Id. ¶ 3).
>
> Midwestern Football purchases Revolution Helmets and the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia." (Id. ¶ 5).
>
> "As a result of Riddell's deceptive marketing, consumers in West Virginia were exposed, and continue to be exposed, to Riddell's misleading representations and purchased Revolution Helmets at market prices reflecting these helmets' alleged concussion reducing benefits rather than at the lower market price that would have existed with truthful information about the Revolution Helmet product. All of these West Virginia consumers who purchased a Revolution Helmet have been injured by Riddell's wrongful conduct through the inflated market price." (Id. ¶ 24).
>
> "Because Plaintiff is a 'person,' and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct." (Id. ¶ 40).

These allegations serve to frame up the remaining two elements required for a section 46A-6-106(a) claim.  The allegations give rise to the theory that Riddell was able to demand a higher market price for the Revolution Helmets by falsely claiming the devices reduced the rate of concussive injuries experienced with traditional helmets.  Midwestern lost money by purchasing Revolution Helmets at the inflated price -- believing Riddell's claims of effectiveness -- instead of purchasing the lower-priced traditional helmets that were not represented as having the enhanced concussion protection.  Midwestern concedes expert testimony will be required to establish the but-for market price.  It need not, however, offer such proof in its pleading.

The court concludes that these allegations cross the plausibility threshold for causation, reliance, and cognizable injury.  Consequently, these grounds for dismissal lack merit.[2]

---

[2]   The same is true for the Rule 9(b) contention.  The operative pleading alleges Midwestern purchased Revolution Helmets on an annual basis.  It asserts that the Revolution Helmets were first offered for sale in 2002, with concussive reduction technology claims made at that time and up to the present day.  (Op. Pldg. ¶¶ 9, 18(a)).  The time, place, and contents of the false representations are thus adequately set forth.  The allegations quoted supra supply the remaining Rule 9(b) information required by our court of appeals in Wilson and Takeda.

### 2. Standing

Riddell next asserts dismissal is warranted due to Midwestern's status as an incorporated non-profit youth organization.  Specifically, Riddell contends that Midwestern does not qualify as a "consumer" and is thus not entitled to avail itself of the claim it pleads.  As noted, Midwestern alleges a claim under WVCCPA section 46A-6-106(a), which provides pertinently as follows:

> Any person who purchases . . . goods . . . and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court . . . .

W. Va. Code § 46A-6-106(a).  As Midwestern emphasizes, standing is dependent upon one satisfying the definition of a "person" as opposed to a "consumer."  The definition of "person" is found in section 46A-1-102(31): "'Person' . . . includes a natural person or an individual, and an organization."  W. Va. Code, § 46A-1-102(31).

It is true, as Riddell asserts, that section 46A-6-106 is entitled "Actions by consumers."  That matters little.  <u>See</u> W. Va. Code § 2-2-12 ("[S]ection headings . . . of any act of the Legislature . . . are hereby declared to be mere catchwords and

12

shall not be deemed or construed . . . as indicating or expressing legislative intent or purpose.").

It is also true that the Supreme Court of Appeals of West Virginia has spoken on occasion in terms of the statute applying to "consumers," as it so obviously does. <u>See</u>, <u>e.g.</u>, <u>Quicken Loans, Inc. v. Brown</u>, 230 W. Va. 306, 328, 737 S.E.2d 640, 662 (2012); <u>White v. Wyeth</u>, 227 W. Va. 131, 138, 140, 705 S.E.2d 828, 835, 837 (2010) (consumer fraud class action case); Syl. Pt. 16, <u>In re West Virginia Rezulin Litigation</u>, 214 W. Va. 52, 57, 585 S.E.2d 52, 57 (2003)("For a consumer to make out a prima facie case to recover damages for 'any ascertainable loss' under W. Va. Code, 46A-6-106 . . . , the consumer is not required to allege a specific amount of actual damages."). It is further the case that sections 46A-6-106(b) and (e) which, as noted below, were added by the Legislature in 2005, use the word "consumer" in multiple locations without like reference to the word "person," but without changing the word "person" in section 46A-6-106(a). These considerations are influential from a statutory construction perspective.

The court concludes that the legislative history supports Midwestern's position. From the time of its enactment in 1974 until its amendment in 2005, section 46A-6-106 consisted of only two numbered sections. The first of those two sections is

identical to the version of section 46A-6-106(a) that is applicable here. The second section, regarding a proof component for a section 46A-6-106 violation, did not use the word "consumer."

It is also to be noted that a further amendment to section 46A-6-106 became effective just days ago on June 12, 2015. While inapplicable to this case, the newly minted provision strikes all references to the word "consumer." The Legislature additionally (1) retitled the provision to read "Private causes of action," and (2) left intact the use of the term "person" in section 46A-6-106(a), also adding that same term in multiple locations throughout section 46A-6-106. One such addition appears in the section 46A-6-106(b) notice provision, which has now been moved to subdivision (c). The word "consumer" that appeared twice in that notice provision as a result of the 2005 amendment has now been replaced in those two locations with the word "person."

Yet, no constructive, interpretive or historical exercise is warranted in light of the unambiguous language found in the 2005 version of section 46A-6-106(a) applicable here. See State ex rel. West Virginia Secondary School Activities Com'n v. Hummel, --- W. Va. ---, ---, 769 S.E.2d 881, 887-88 (2015); Syl. Pt. 2, Crockett v. Andrews, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its

plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 5, State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

Narrowing the statute to cover only those qualifying as a "consumer" would plainly constitute a judicial amendment of the provision. That would tread impermissibly upon the Legislature's constitutional role, especially when the Legislature exercised that role in recent months in a manner inconsistent with the position urged by Riddell. Syl. Pt. 4, Bennett v. Warner, 179 W. Va. 742, 743, 372 S.E.2d 920, 921 (1988) ("It is the prerogative of the Legislature to change its mind and alter statutes . . . .").

Inasmuch as Midwestern plainly qualifies as a "person" for purposes of section 46A-6-106(a), it satisfies the standing requirement.

III.

It is, accordingly, ORDERED that Riddell's motion to dismiss be, and hereby is, denied.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 18, 2015

John T. Copenhaver, Jr.
United States District Judge