```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA

                        AT CHARLESTON


MIDWESTERN MIDGET FOOTBALL
CLUB INC.,

          Plaintiff,


v.                                   Civil Action No. 2:15-00244


RIDDELL, INC.,

          Defendant.



                 MEMORANDUM OPINION AND ORDER
```

Pending is a motion to dismiss by defendant Riddell, Inc. ("Riddell"), filed April 27, 2015.


I.


Plaintiff Midwestern Midget Football Club, Inc. ("Midwestern"), is a West Virginia citizen.  It is a non-profit youth football organization operating in Kanawha County, West Virginia.  Defendant Riddell, Inc. ("Riddell"), is an Illinois citizen that designs, manufactures, markets, and sells a cranial protection device for football players known as the Revolution Helmet.

Riddell sells Revolution Helmets at a market price reflective of its claim that they reduce the incidence of concussion in comparison with its own, earlier helmet designs and competitor helmets.  Specifically, the Revolution Helmets were marketed as containing reduction technology that putatively reduced the incidence of concussions by up to 31%.

Approximately 150 youth participate in Midwestern's program every year.  It supplies the helmets for these participants.  Every year Midwestern purchases between 12 and 24 new Revolution Helmets for its participants who are aged 14 years or younger.

Midwestern asserts that Riddell's marketing claims were knowingly false.  Among other things, Midwestern contends that Riddell's assertions were based upon a statistically unsound study paid for by Riddell and co-authored by a Riddell employee.  The study was publically criticized by third-party scientists.  Indeed, Midwestern alleges that scientific studies and other data of which Riddell was aware indicated that the Revolution Helmets made no material difference to concussion risk as compared to traditional helmets.

On December 2, 2014, Midwestern instituted this action in the Circuit Court of Kanawha County against Riddell on its own behalf, and that of a class of similarly situated consumers, via a

single-count claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").  On January 6, 2015, Riddell removed. The putative class, as set forth in the amended class action complaint ("operative pleading") filed April 10, 2015, is defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present . . . .

(Op. Pldg. ¶ 25).

Midwestern asserts that as a result of Riddell's alleged deceptive marketing, West Virginia consumers were exposed to Riddell's false representations.  As a result, Midwestern asserts that those same West Virginia customers who purchased Revolution Helmets at certain higher market prices reflecting their alleged concussion-reducing benefits would have, without the false representations, purchased alternative helmets at a lower market price.[1]

---

[1] In its memorandum in support of the motion to dismiss, Riddell offers a number of factual assertions beyond the four corners of the operative pleading.  For example, it asserts that (1) a February 2006 article in the Journal of Neurosurgery supports the view that the Revolution Helmet decreased relative concussion risk by 31%, (2) a federal district court in a similar case found, as urged by Riddell, that no genuine issue of fact existed on the question of whether the 31% reduction claim was false or untruthful, (3) the Federal Trade Commission chose not to recommend enforcement action against Riddell surrounding the Revolution Helmet claims, and (4) an April 2014 study by Virginia Tech showed that Revolution Helmets reduced concussion risk.  The

The operative pleading alleges a single count under the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Specifically, it contends that Riddell's marketing efforts were composed of false statements which it intended customers to rely upon when making helmet-purchase decisions. This is alleged to be an unfair and deceptive act or practice in violation of West Virginia Code section 46A-6-102(7)(E). Midwestern additionally alleges as follows:

> Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).
>
> Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct. <u>Id.</u> at § 46A-6-106(a).

The referenced provision of the West Virginia Code, section 46A-6-106(a), provides pertinently as follows:

> Any person who purchases . . . goods . . . and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court . . . .

W. Va. Code § 46A-6-106(a). Midwestern seeks, <u>inter alia</u>, class certification, declaratory and injunctive relief, and actual damages or a statutory penalty, whichever is greater.

---

court must, at this juncture, treat as true the allegations in the operative pleading.

On June 18, 2015, the court denied the instant motion to dismiss. The next day, the court of appeals handed down In re GNC Corp., 789 F.3d 505 (4th Cir. 2015). In response, this court on June 22, 2015, vacated the June 18, 2015, memorandum opinion and order. The parties were directed to "brief the extent to which, if at all, the decision in In re GNC" impacted disposition of the motion to dismiss. Id. at 1. The briefing has concluded.

II.

A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also

Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

When making an allegation of fraud, more particularity is required. A plaintiff must meet the heightened pleading requirements set forth in Rule 9. Rule 9 requires a party to "state with particularity the circumstances constituting [the] fraud." F.R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the

false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008), see also U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013)(noting that the Rule 9 standard set forth in Wilson is "as applicable in cases brought under [the statute at issue in Wilson] as [it is] in other fraud cases")(emphasis added).

B.  Standing

Riddell asserts dismissal is warranted due to Midwestern's status as an incorporated non-profit youth organization.  Specifically, Riddell contends that Midwestern does not qualify as a "consumer" and is thus not entitled to avail itself of the claim it pleads.  As noted, Midwestern alleges a claim under WVCCPA section 46A-6-106(a), which provides pertinently as follows:

> Any person who purchases . . . goods . . . and thereby
> suffers any ascertainable loss of money . . . as a
> result of the use or employment by another person of a
> method, act or practice prohibited or declared to be
> unlawful by the provisions of this article may bring an
> action in the circuit court . . . .

W. Va. Code § 46A-6-106(a).  As Midwestern emphasizes, standing is dependent upon one satisfying the definition of a "person" as opposed to a "consumer."  The definition of "person" is found in

7

section 46A-1-102(31): "'Person' . . . includes a natural person or an individual, and an organization." W. Va. Code, § 46A-1-102(31).

It is true, as Riddell asserts, that section 46A-6-106 is entitled "Actions by consumers." That matters little. See W. Va. Code § 2-2-12 ("[S]ection headings . . . of any act of the Legislature . . . are hereby declared to be mere catchwords and shall not be deemed or construed . . . as indicating or expressing legislative intent or purpose.").

It is also true that the Supreme Court of Appeals of West Virginia has spoken on occasion in terms of the statute applying to "consumers," as it so obviously does. See, e.g., Quicken Loans, Inc. v. Brown, 230 W. Va. 306, 328, 737 S.E.2d 640, 662 (2012); White v. Wyeth, 227 W. Va. 131, 138, 140, 705 S.E.2d 828, 835, 837 (2010) (consumer fraud class action case); Syl. Pt. 16, In re West Virginia Rezulin Litigation, 214 W. Va. 52, 57, 585 S.E.2d 52, 57 (2003)("For a consumer to make out a prima facie case to recover damages for 'any ascertainable loss' under W. Va. Code, 46A-6-106 . . . , the consumer is not required to allege a specific amount of actual damages."). It is further the case that sections 46A-6-106(b) and (e) which, as noted below, were added by the Legislature in 2005, use the word "consumer" in multiple locations without like reference to the word "person," but without

changing the word "person" in section 46A-6-106(a). These considerations are influential from a statutory construction perspective.

The court concludes that the legislative history supports Midwestern's position. From the time of its enactment in 1974 until its amendment in 2005, section 46A-6-106 consisted of only two numbered sections. The first of those two sections is identical to the version of section 46A-6-106(a) that is applicable here. The second section, regarding a proof component for a section 46A-6-106 violation, did not use the word "consumer."

It is also to be noted that a further amendment to section 46A-6-106 became effective just weeks ago on June 12, 2015. While inapplicable to this case, the newly minted provision strikes all references to the word "consumer." The Legislature additionally (1) retitled the provision to read "Private causes of action," and (2) left intact the use of the term "person" in section 46A-6-106(a), also adding that same term in multiple locations throughout section 46A-6-106. One such addition appears in the section 46A-6-106(b) notice provision, which has now been moved to subdivision (c). The word "consumer" that appeared twice in that notice provision as a result of the 2005 amendment has now been replaced in those two locations with the word "person."

Yet, no constructive, interpretive or historical exercise is warranted in light of the unambiguous language found in the 2005 version of section 46A-6-106(a) applicable here.  See State ex rel. West Virginia Secondary School Activities Com'n v. Hummel, --- W. Va. ---, ---, 769 S.E.2d 881, 887-88 (2015); Syl. Pt. 2, Crockett v. Andrews, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 5, State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

Narrowing the statute to cover only those qualifying as a "consumer" would plainly constitute a judicial amendment of the provision.  That would tread impermissibly upon the Legislature's constitutional role, especially when the Legislature exercised that role in recent months in a manner inconsistent with the position urged by Riddell.  Syl. Pt. 4, Bennett v. Warner, 179 W. Va. 742, 743, 372 S.E.2d 920, 921 (1988) ("It is the prerogative of the Legislature to change its mind and alter statutes . . . .").

Inasmuch as Midwestern plainly qualifies as a "person" for purposes of section 46A-6-106(a), it satisfies the standing requirement.

C. <u>In re GNC</u>

In <u>In re GNC</u>, consumers who purchased joint health supplements instituted class actions in multiple states, alleging various supplement manufacturers violated certain state consumer protection laws by falsely touting the effectiveness of the supplements. The court of appeals concluded that "marketing statements that accurately describe the findings of duly qualified and reasonable scientific experts are not literally false . . . ." <u>Id.</u> at 509. Consequently, Midwestern has abandoned its claim of literal falsity in light of <u>In re GNC</u>.

It asserts, however, that its putative "claim for misleading advertising in respect to youth football helmets is untouched by <u>In re GNC</u>." (Resp. at 1). Indeed, the plaintiffs in <u>In re GNC</u> had never alleged nor argued "that any of the [manufacturer] representations . . . [were] literally true but misleading." <u>Id.</u> at 514. And so, the court of appeals did not reach the question of "whether any of the representations made on the Companies' products are misleading" and thus perhaps

11

actionable under other consumer protection statute provisions. **Id.** at 516.

The difficulty with Midwestern's assertion of a misleading advertising claim, as pointed out at length in Riddell's briefing, is that the central allegations of the operative pleading are focused on a claim of literal falsity and not misleading advertising.  To the extent Midwestern desires to pursue a claim of misleading advertising, it is incumbent upon it to plead allegations in satisfaction of the plausibility standard attached to Rule 12(b)(6).

It is, accordingly, ORDERED that Riddell's motion to dismiss be, and hereby is, granted, without prejudice, and with leave to Midwestern to file an amended pleading on or before August 20, 2015.[2]  In the event that Riddell chooses to move pursuant to Rule 12(b)(6), any such motion shall be filed on or before September 3, 2015.

---

[2] The Clerk is directed to administratively terminate those motions found at docket entries 8, 12, 25 and 32.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: August 10, 2015

_____
John T. Copenhaver, Jr.
United States District Judge