**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **MIDWESTERN MIDGET FOOTBALL CLUB INC.,** | |
| **Plaintiff,** | **CASE NO.: 2:15-cv-00244** |
| | **Hon. John T. Copenhaver** |
| **v.** | |
| **RIDDELL, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**SECOND AMENDED CLASS ACTION COMPLAINT[1]**

1.     Plaintiff Midwestern Midget Football Club, Inc. is a non-profit corporation organizing football for players age 14 or younger, a category of football known nationally as "Youth Football." Plaintiff purchased Riddell Revolution youth football helmets ("Revolution Helmets"). Defendant Riddell, Inc. is involved, *inter alia*, in the design, manufacture, marketing, and sale of the Revolution Helmets. Riddell sells Revolution Helmets at a market price reflecting marketing claims that the helmets reduce the incidence of concussion through "Concussion Reduction Technology" in comparison with its own, earlier helmet designs and helmets of competitors. In particular, Riddell stated that through its "Concussion Reduction Technology," its Revolution Helmets reduce the incidence of concussion by up to "31%" for youth football participants.

---

[1] The following amendment is submitted in accordance with the Court's Order of August 10, 2015 (ECF No. 41).

2.      These marketing statements were misleading and lead to consumer confusion because, for example, the study that Riddell was trumpeting did not include youth helmets in its testing of the incidence of concussion rates.

3.      Unfortunately, these misleading marketing statements were highly successful in creating consumer confusion. Plaintiff and others purchased Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of concussion in comparison with other helmets. Plaintiff now sues Riddell on its own behalf and on behalf of a class for violating the West Virginia Consumer Credit and Protection Act ("WVCCPA"), seeking injunctive relief, the greater of actual damages or statutory damages, and attorney's fees and costs.

## WEST VIRGINIA CODE § 46A-6-106

4.      On October 10, 2014, Plaintiff sent Defendant Riddell, Inc. a "cure letter" pursuant to West Virginia Code § 46A-6-106 via United States Certified Mail (7013 3020 0000 7168 5449). Plaintiff did not receive a response to this letter.

## PARTIES

5.      Plaintiff Midwestern Midget Football Club Inc. ("Midwestern Football") is an incorporated non-profit youth football organization, operating in Kanawha County, West Virginia and a citizen of West Virginia. Approximately 150 youths participate in the program every year. Midwestern Football supplies the helmets for these participants. Each year, Midwestern Football purchases between 12 and 24 new Riddell Revolution Helmets. Older helmets are refurbished when appropriate, and Midwestern Football sends older Riddell Revolution Helmets to All American Sports Corporation for refurbishing. Midwestern

2

Football purchases Revolution Helmets and the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia.

6.      Defendant Riddell, Inc. is a subsidiary corporation of Riddell Sports Group, Inc., organized and existing under the laws of the State of Illinois with a principal place of business in the State of Illinois. Riddell, Inc. is engaged in the business of designing, manufacturing, selling and distributing football equipment, including Revolution Helmets. This defendant ships its products, including Revolution Helmets, to purchasers and distributors in West Virginia, maintains a direct sales force in West Virginia, sells its products in retail stores in West Virginia, and advertises its products in West Virginia. Through a corporate sibling, All American Sports Corporation, it is engaged in the reconditioning of Riddell helmets, including Revolution Helmets, and related marketing in West Virginia.

## FACTS

7.      Riddell has engaged in the design, development, manufacture, sale, and distribution of football equipment, including helmets, since 1922.

8.      In 2002, Riddell introduced for sale the first versions of the Riddell Revolution Helmet, which Riddell manufactured, sold, and distributed. Riddell claimed that the Revolution Helmet was designed to reduce the risk of concussion through the incorporation of its patented "Concussion Reduction Technology."

9.      In 2002, Riddell provided a research grant to the University of Pittsburgh Medical Center (hereinafter "UPMC") for a study comparing rates of concussions among

high school athletes who wore Revolution Helmets with those who wore traditional helmets. The UPMC did not study the rates of concussions among youth football players.

10.      Riddell used the results of this study to claim that the Revolution Helmet reduced concussions, and by up to 31%, in marketing of its "Concussion Reduction Technology" to youth football participants and youth football leagues. Riddell's statements directed at youth football participants and leagues were misleading because the UPMC study did not study concussion rates among youth football players.

11.      Despite the lack of evidence that the Revolution Helmet reduced the overall risk of concussion more than other helmets for youth football players, Riddell continued to sell, market, and distribute the Revolution Helmets with the promise of "concussion reduction" to youth football participants and youth football leagues.

12.      Riddell reportedly employs "Over 250 Representatives Nationwide," including representatives in West Virginia. *See* Riddell Find a Representative, *available at* http://team.riddell.com/find-a-rep/ (last visited Aug. 10, 2015). Sales representatives are provided with marketing materials and supply catalogs aimed at youth football leagues.

13.      Riddell has aggressively marketed the Revolution helmet to youth football leagues through its sales representatives, printed marketing materials, videos, sponsorships, and other targeted marketing programs.

14.      For instance, in Riddell previously announced that it signed on as the "Official Hardgoods Supplier of American Youth Football (AYF), the largest youth football organization in the U.S. Under the agreement, Riddell helmets and shoulder pads will be available to some 500,000 youth members of the organization." *See* Riddell Announces 2009

4

Partnership With American Youth Football, *available at* http://news.riddell.com/info/releases/riddell-announces-2009-partnership-with-american-youth-football (last visited Aug. 10, 2015).

15.     Riddell also teamed up with USA Football to establish the Refer-a-Friend program that gave families the opportunity to obtain a Riddell Revolution helmet by referring a friend to the Player Academy. USA Football describes itself as "the sport's national governing body, leading the game's development for youth, high school and other amateur players. The independent nonprofit partners with leaders in medicine, child advocacy and sport to establish important standards rooted in education. USA Football advances coaching education and player skill development for safer play and positive experiences through athletics." *See* USA Football About Us, *available at* http://usafootball.com/about-us (last visited Aug. 10, 2015).

16.     Throughout the Class Period, Riddell has marketed and advertised the Revolution Helmet as significantly reducing the risk of concussion for youth football participants through its patented "Concussion Reduction Technology." The following are specific examples of marketing statements Riddell has made, and continues to publicly endorse through inclusion on its website, promoting this purported concussion reducing benefit:

    a.     Shown to reduce incidence of concussion by 31% versus traditional helmets [citing Neurosurgery, February 2006, Vol. 58, No.2], the helmet's Revolution Concussion Reduction Technology uses three principal design elements – an offset shell, mandible extensions and

817691

energy managing S-Pads – to provide superior protection for players on the field.[2]

b.  In relative terms, athletes who wore the Riddell Revolution were 31 percent less likely to suffer a concussion compared to athletes who wore traditional or standard football helmets. For athletes who had never suffered a previous concussion, wearing the Riddell Revolution decreased their relative risk of concussion by 41 percent. Both of these findings were statistically significant.[3]

17.   The statements described with specificity in Paragraph 18 above are all currently available on news.riddell.com.

18.   The following are quotations of specific examples of advertisements Riddell has placed in USA Football's magazine:

a.  DEMAND REVOLUTION CONCUSSION REDUCTION TECHNOLOGY. RESEARCH SHOWS A 31% REDUCTION IN THE RISK OF CONCUSSION IN PLAYERS WEARING RIDELL REVOLUTION HELMETS WHEN COMPARED TO TRADITIONALLY DESIGNED HELMETS.[4]

b.  RESEARCH SHOWS A 31% REDUCTION IN THE RISK OF CONCUSSION IN PLAYERS WEARING RIDDELL REVOLUTION HELMETS.[5]

19.   Despite Riddell's misleading representations to the contrary, research does not show that youth football players wearing Riddell Revolution helmets have a 31% reduction

---

[2] *See* Riddell's Latest Innovation In Protection – The Riddell Revolution Speed Helmet – Gains Momentum at Top Division I Football Programs (Nov. 8, 2008), available at http://news.riddell.com/info/releases/riddells-latest-innovation-in-protection-the-riddell-revolution-speed-helmet-gains-momentum-at-top-division-i-football-programs (last visited Aug. 10, 2015).

[3] Neurosurgery Study: Research Has Shown a Reduction in the Risk of Concussion in Players Wearing Riddell Revolution Helmets When Compared to Traditionally Designed Helmets (Feb. 1, 2006), available at http://news.riddell.com/info/releases/neurosurgery-study:-research-has-shown-a-reduction-in-the-risk-of-concussion-in-players-wearing-riddell-revolution-helmets-when-compared-to-traditionally-designed-helmets (last visited Aug. 10, 2015).

[4] USA Football Magazine, Advertisement for Riddell Revolution Speed Youth, Revolution Edge Youth, Revolution Youth, Attack Youth Helmets, p.11, Summer 2010 (all caps in original); see also USA Football Magazine, Advertisement for Riddell Revolution Speed Youth, Revolution Edge Youth, Revolution Youth, Attack Youth Helmets, p.11, Fall 2010.

[5] USA Football Magazine, Advertisement for "Riddell Revo Speed Youth" helmet, USA Football Magazine, p.35, Summer 2009 (all caps in original).

817691

in the risk of concussion. Scientific studies have shown that the brand of football helmet makes no material difference in a player's risk of concussion and that high tech helmets like the Revolution do not reduce concussion risk for players any more effectively than lower-cost helmets despite its claims of "Concussion Reduction Technology."

20.        Because Riddell's claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the Revolution Helmet will reduce concussions, and may do so by 31%. This allowed Riddell to capitalize on consumer confusion and charge a premium price of approximately $50 for the Revolution Helmet, which reflected the illusory safety benefit of its "Concussion Reduction Technology."

21.        As a result of Riddell's deceptive marketing, consumers in West Virginia were exposed, and continue to be exposed, to Riddell's misleading representations and purchased Revolution Helmets at market prices reflecting these helmets' alleged concussion reducing benefits rather than at the lower market price that would have otherwise existed. All of these West Virginia consumers who purchased a Revolution Helmet have been injured by Riddell's wrongful conduct through the inflated market price.

## CLASS ACTION ALLEGATIONS

22.        Plaintiff brings this class action on behalf of himself and all others similarly situated in West Virginia as members of a proposed Class defined as follows:

> All West Virginia residents who purchased a Riddell Revolution football helmet for use in youth football in the State of West Virginia during the period beginning four years prior to the date of filing of this Class Action Complaint through the present (the "Class Period").

> Excluded from the Class are the following:

817691

    a.      Defendant and any of its officers, directors, and employees, and any person or entities that have already settled or otherwise compromised similar claims against the defendant;

    b.      Plaintiff's counsel, anyone working at the direction of Plaintiff's counsel, and/or any of their immediate family members; and

    c.      Anyone who has pending against a named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

23.      This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

24.      The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff alleges that the Class includes at least several dozen members.

25.      Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

    a.      Whether Defendant's representations regarding youth Revolution Helmets were misleading or reasonably likely to deceive;

    b.      Whether Defendant had adequate substantiation for its claims about youth Revolution Helmets prior to making them;

    c.      Whether Defendant's helmet reduces the risk of concussion by 31% for youth football participants, a material amount, or at all;

d.  Whether Defendant charged a market price for the helmet reflecting the illusory safety benefit;

e.  Whether Defendant engaged in unfair, unlawful, or deceptive business practices regarding its helmet in violation of the WVCCPA;

f.  Whether Defendant represented, through its words or conduct, that the helmet had characteristics, uses, or benefits that it did not actually have in violation of the WVCCPA;

g.  Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the amount of such damages;

h.  Whether Plaintiff and the Class have been damaged by the wrongs complained of herein, and if so, whether Plaintiff and the Class are entitled to equitable relief, actual damages, statutory damages, or other relief, and the nature and amount of such relief; and

i.  Whether Defendant was unjustly enriched by its claims of concussion reduction for youth football participants.

26.     Plaintiff's claims are typical of the Class members' claims. Defendant's common course of conduct caused Plaintiff and all Class members the same harm. Defendant's conduct caused each Class member's economic losses. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims.

27.     Plaintiff is an adequate Class representative because it is a member of the class it seeks to represent and its interests do not conflict with other Class members' interests. Plaintiff retained counsel competent and experienced in consumer protection class actions, and Plaintiff and its counsel intend to prosecute this action vigorously for the class's benefit. Plaintiff and its counsel will fairly and adequately protect Class interests.

28.     The Class may be properly maintained under Rule 23(b)(2). Defendant has acted or refused to act, with respect to some or all issues presented in this Complaint, on

817691

grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

29.      The Class can be properly maintained under Rule 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, it would be unduly burdensome on the court system for the many class members' individual cases to proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it would require individual resolution of common legal and factual questions. By contrast, the class action device presents fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

### COUNT ONE
### Violation of the West Virginia Consumer Credit and Protection Act

30.      Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Complaint.

31.      The WVCCPA prohibits unfair and deceptive acts or practices in order to protect the public. W. Va. Code § 46A-6-101, -104.

32.      Riddell marketed youth Revolution Helmets as reducing the risk of concussion and by up to 31% in comparison with other helmets based on the UPMC study even though the UPMC did not test youth helmets. Riddell knew these statements were

10

817691

misleading because, among other reasons, as a sponsor and participant in the UPMC study it knew that youth helmets were not included in the testing regimen.

33.     Riddell, in actively marketing this illusory benefit to youth football participants and youth football leagues, intended that consumers would rely on the misleading information in the marketing when making a determination about what helmet to buy.

34.     The effect of Riddell's marketing was to allow Riddell to charge a premium price for the Revolution Helmet.

35.     Plaintiff is a "person" as defined by WVCCPA § 46A-1-102(31).

36.     Because Plaintiff is a "person," and suffered a loss of money as a result of purchasing Revolution Helmets at market pricing reflecting the unfair and deceptive marketing of an illusory concussion-reducing benefit, Plaintiff has standing to bring an action against Riddell challenging Riddell's unlawful conduct. *Id.* at § 46A-6-106(a).

## COUNT TWO
### Unjust Enrichment

37.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the factual allegations contained in the preceding paragraphs of this Complaint.

38.     Plaintiff brings claims individually and on behalf of the Class.

39.     Plaintiff and the Class have conferred a benefit on Defendant by purchasing Revolution Helmets for youth football participants and youth football leagues.

40.     Plaintiff and the Class paid a premium price for youth Revolution Helmets based on Defendant's misleading claims concerning "Concussion Reduction Technology"

817691

and the reduction of the incidence of concussion by up to "31%" for youth football participants even though youth Revolution Helmets were not included in the UPMC study.

41.       The retention of the revenues derived from the sale of youth Revolution Helmets under these circumstances would be unjust and inequitable because Defendant mislead Plaintiff and the Class through its statements about the benefits of its "Concussion Reduction Technology" by citing the UPMC study even though youth helmets were not included in the testing regimen.

42.       Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the other members of the Class's purchases of Revolution Helmets for youth football participants and youth football leagues.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class, requests that the Court order the following relief and enter judgment against Defendant as follows:

a.       An Order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the class;

b.       A declaration that Defendant has engaged in the illegal conduct described herein;

c.       An Order awarding declaratory and injunctive relief as permitted by law or equity, including permanently enjoining Defendant from continuing its unlawful practices as set forth herein;

d.       A judgment awarding Plaintiff and the Class actual damages or the WVCCPA statutory penalty, whichever is greater;

12

817691

e.  An Order that Plaintiff and the Class are entitled to restitution and

disgorgement of Defendant's ill-gotten gains or excessive monies paid;

f.  Ordering Defendant to engage in a corrective advertising campaign;

g.  Awarding attorney fees and costs incurred in prosecuting this action;

h.  Pre-judgment and post-judgment interest; and

i.  All other relief that the Court deems necessary, just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury.

Dated: August 19, 2015

/s/Michael Murphy
Michael Murphy
Bailey & Glasser LLP
910 17th St. NW, Suite 800
Washington, DC 20006
202-463-2101(phone)
202-463-2103(fax)
mmurphy@baileyglasser.com

Marc Weintraub
Ryan McCune Donovan
Bailey & Glasser LLP
209 Capitol St.
Charleston, WV 25301
304-345-6555(phone)
304-342-1110(fax)
mweintraub@baileyglasser.com
rdonovan@baileyglasser.com

Attorneys for Plaintiff

817691

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **MIDWESTERN MIDGET** | ) | |
| **FOOTBALL CLUB INC.,** | ) | |
| | ) | **CASE NO.: 2:15-cv-00244** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Hon. John T. Copenhaver, Jr.** |
| | ) | |
| **RIDDELL, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The foregoing Plaintiffs' Second Amended Complaint was served on counsel of record through this Court's CM/ECF system on August 19, 2015.

Dated: August 19, 2015

/s/Michael L. Murphy
Michael Murphy
Bailey & Glasser LLP
910 17th St. NW, Suite 800
Washington, DC 20006
202-463-2101(phone)
202-463-2103(fax)
mmurphy@baileyglasser.com