```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON
```

**MIDWESTERN MIDGET FOOTBALL
CLUB INC.,**

      Plaintiff,

v.                                  Civil Action No. 2:15-00244

**RIDDELL, INC.,**

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is a motion to dismiss the Second Amended Complaint, filed by defendant Riddell, Inc. ("Riddell") on September 3, 2015.

I.    Factual and Procedural Background[1]

Plaintiff Midwestern Midget Football Club, Inc. ("Midwestern") is a West Virginia citizen. It is a non-profit youth football organization operating in Kanawha County, West Virginia. Defendant Riddell, Inc. ("Riddell"), is an Illinois citizen that designs, manufactures, markets, and sells a line of cranial protection devices for football players known as the

---

[1] The facts recited reflect the allegations of the Second Amended Complaint. As discussed below, the court must accept these facts as true for purposes of the motion to dismiss.

Revolution Helmets.

Approximately 150 youths participate in Midwestern's program every year. It supplies the helmets for these participants. Every year Midwestern purchases between 12 and 24 new Revolution Helmets for its participants who are aged 14 years or younger.

Riddell sells Revolution Helmets at a market price reflective of its claim that they reduce the incidence of concussion in comparison with its own, earlier helmet designs and competitor helmets. Specifically, the Revolution Helmets were marketed as containing technology that putatively reduced the incidence of concussions by up to 31%. This claim was based on a 2002 study conducted at the University of Pittsburgh Medical Center ("Pittsburgh study") comparing concussion rates in high school athletes wearing Revolution Helmets and traditional helmets. The Pittsburgh study did not include youth helmets of the type purchased by Midwestern.

On December 2, 2014, Midwestern instituted this action in the Circuit Court of Kanawha County against Riddell on its own behalf, and that of a class of similarly situated consumers,[2] with

---

[2] Midwestern defines the proposed class, with certain limited exclusions, as "All West Virginia residents who purchased a Riddell Revolution football helmet for use in youth football in the State of West Virginia during the period beginning four years

a single-count claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA").  West Virginia Code, section 46A-6-106(a), provides in pertinent part:

> Any person who purchases . . . goods . . . and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court . . . .

W. Va. Code § 46A-6-106(a).

On January 6, 2015, Riddell removed.  In its initial and first amended complaint, Midwestern alleged that the claims Riddell made to market Revolution Helmets were knowingly false.  To support this claim Midwestern contended that the Pittsburgh study was statistically unsound, was paid for by Riddell, and was co-authored by a Riddell employee.  Midwestern also alleged that the study was publically criticized by third-party scientists and that other studies indicated that Revolution Helmets made no material difference to concussion risk as compared to traditional helmets.

Midwestern asserted that as a result of Riddell's alleged deceptive marketing, West Virginia consumers were exposed to Riddell's false representations.  Midwestern claimed that those same West Virginia customers who purchased Revolution Helmets at

---

prior to the date of filing of this Class Action Complaint through the present (the "Class Period")."

3

certain higher market prices reflecting their alleged concussion-reducing benefits would have, without the false representations, purchased alternative helmets at a lower market price.

On August 10, 2015, the court granted Riddell's motion to dismiss, without prejudice, concluding that the first amended complaint failed to state a claim because "marketing statements that accurately describe the findings of duly qualified and reasonable scientific experts are not literally false . . . ." In re GNC Corp., 789 F.3d 505, 509 (4th Cir. 2015) ("In re GNC"). The court granted Midwestern leave to file an amended pleading stating an alternative theory, asserted only in its briefing, that Riddell's marketing statements, while literally true, were misleading to consumers in violation of the WVCCPA.

Midwestern filed its second amended class action complaint ("operative complaint") on August 18, 2015. The operative complaint continues to allege a single count violation of the WVCCPA, as well as an additional claim for unjust enrichment. The WVCCPA claim alleges that Riddell's marketing statements were knowingly misleading because Riddell marketed its youth Revolution Helmets as reducing concussion risk, citing the Pittsburgh study, despite the fact that the study did not test youth helmets. The unjust enrichment claim alleges that Riddell was unjustly enriched to the extent it has retained a premium paid

4

by purchasers of youth Revolution Helmets based on its "Concussion Reduction Technology."[3]

In the operative complaint, Midwestern seeks, <u>inter alia</u>, class certification, injunctive relief, and actual damages or a statutory penalty, whichever is greater. Riddell's renewed motion to dismiss argues that the operative complaint fails to cure the defects based upon which the court granted its previous motion to dismiss.

## II. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

---

[3] In their briefing on the instant motion to dismiss, both parties continue to offer a number of factual assertions beyond the four corners of the operative pleading. In deciding this motion to dismiss, the court will consider the complaint and documents incorporated by reference therein, but does not look beyond those documents to consider the parties' factual contentions made in memoranda and their exhibits. <u>See</u> <u>E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.</u>, 637 F.3d 435, 448-49 (4th Cir. 2011).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

When making an allegation of fraud, more particularity is required. A plaintiff must meet the heightened pleading requirements set forth in Rule 9. Rule 9 requires a party to "state with particularity the circumstances constituting [the] fraud." F.R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008), see also U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013) (noting that the Rule 9 standard set forth in Wilson is "as applicable in cases brought under [the statute at issue in Wilson] as [it is] in other fraud cases") (emphasis added).

III. Discussion

Riddell offers five arguments in support of its motion to dismiss. First, it contends that the operative complaint fails to plead a plausible claim under WVCCPA § 46A-6-106(a), because Midwestern continues to allege that Riddell's advertisements were false rather than that those advertisements were literally true but misleading. Second, it claims that the facts pleaded by Midwestern fail to demonstrate causation or reliance. Third, it claims Midwestern alleges no cognizable injury. Fourth, it

7

asserts that plaintiffs have failed to satisfy the heightened pleading requirements for fraud claims under Rule 9(b).  Fifth, it asserts that the operative complaint fails to adequately state a claim for unjust enrichment.  The following discussion addresses the arguments against Midwestern's WVCCPA claim before taking up the unjust enrichment claim.

    A.    Pleading under Section 46A-6-106(a)

The necessary elements of proof for the claim pled by Midwestern under WVCCPA section 46A-6-106(a) have been found to be:  "(1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss."  White v. Wyeth, 227 W. Va. 131, 140, 705 S.E.2d 828, 837 (2010).  Additionally, "[w]here the deceptive conduct or practice alleged involves affirmative misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection."  Id.

One species of "unlawful conduct" under the WVCCPA consists of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  W. Va. Code § 46A-6-104.  The statute defines several acts as "[u]nfair methods of competition and unfair or deceptive acts or practices," including, in pertinent part:

8

> Representing that goods or services have . . . benefits . . . that they do not have . . . .;
>
> The act, use or employment . . . of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . .; and
>
> Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods . . . which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive.

W. Va. Code § 46A-6-102(7)(E), (M), (N).

The Fourth Circuit has observed that courts construing the many statutes with prohibitions against false advertising have come to a "broadly shared understanding" of the types of unfair or deceptive practices those statutes cover: "Courts uniformly interpret [prohibitions of] 'false or misleading' [advertising] as creating two different theories of recovery in a false advertising claim: A plaintiff must allege either (i) that the challenged representation is literally false or (ii) that it is literally true but nevertheless misleading." In re GNC, 789 F.3d at 514.

As noted above, Midwestern's first amended complaint was dismissed by the court because its allegations, resting on a theory that Riddell's marketing claims citing the Pittsburgh study

9

were literally false, were insufficient in light of the Fourth Circuit's holding that "marketing statements that accurately describe the findings of duly qualified and reasonable scientific experts are not literally false . . . ." Id. at 509. Consequently, Midwestern has abandoned its claim of literal falsity, electing instead in the operative complaint to allege that advertising and public statements made by Riddell were misleading to consumers. In particular, the operative complaint alleges that advertisements which cited the Pittsburgh study and suggested that Riddell's youth helmets provided concussion reduction benefits were misleading because the youth helmets were not examined in the study.

Riddell argues that the operative complaint's central allegation, namely, that its marketing statements using the Pittsburgh study were misleading, fails to support a plausible WVCCPA claim under Twombly and Iqbal for several reasons. First, Riddell objects to the plaintiff's newly-asserted theory that the marketing statements at issue were misleading rather than literally false. According to Riddell, this theory is factually inconsistent with the plaintiff's prior complaints and should be rejected on that basis. Second, Riddell asserts that Midwestern fails to identify a statement as "literally true" but nevertheless misleading, as described by In re GNC. Finally, Riddell argues that the operative complaint contains only bare allegations that

10

the marketing statements based on the Pittsburgh study were misleading, without any explanation of how those statements may have misled Midwestern.

As an initial matter, the court rejects the argument that having previously pled that Riddell's marketing statements were knowingly false, the plaintiff should be foreclosed from asserting its claim based on misleading advertising.  It is well-established that, "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'"  Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (quoting In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2nd Cir. 2000); see also 6 Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("[P]laintiff may file a new complaint that does not refer to or adopt any of the deficient allegations in the original pleading").  Even assuming that the allegations in the first amended complaint and the operative complaint are factually inconsistent, allegations made in a superseded complaint are not treated as judicial admissions. See 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 736 (7th Cir. 2002).[4]

---

[4] The court need not reach the question of whether statements made in the first amended complaint, to the extent they are inconsistent with Midwestern's current allegations, might be admissible at a later stage of this proceeding.

It is also of no import that Midwestern has not specifically identified a statement made by Riddell as "literally true." Riddell reads too much into the <u>In re GNC</u> court's observation that a false advertising claim must allege either that a statement made by the defendant was false or "literally true but misleading." The operative complaint identifies the statements the plaintiff alleges were misleading — namely, the claims that Riddell's Revolution Helmets have been shown to reduce concussion risk by as much as 31%. The operative complaint alleges that the use of these statements to market youth helmets was misleading inasmuch as the Pittsburgh study did not include youth helmets.

This central allegation, that Riddell used the Pittsburgh study to suggest a safety benefit for youth Revolution Helmets even though it was a different class of helmets that was subject to testing, provides enough basis to plausibly support a claim for false advertising. While Riddell argues that Midwestern should have pled more specifically what the differences between the youth helmets and the helmets included in the study are, this would require more than necessary at the pleading stage. Accepting the allegations in the operative complaint as true, Midwestern has suggested that Riddell's advertisements were deceptive or misleading inasmuch as consumers were led to believe that youth helmets were involved in the Pittsburgh study and that those same helmets were shown to provide a safety benefit in the

12

form of reduced concussion risk, despite the fact that those particular helmets were not part of the study.[5]

Next, Riddell argues that the operative complaint fails to adequately allege causation, reliance and injury. The operative complaint includes, <u>inter</u> <u>alia</u>, the following:

> "Riddell used the results of [the Pittsburgh] study to claim that the Revolution Helmet reduced concussions, and by up to 31%, in marketing its 'Concussion Reduction Technology' to youth football participants and youth football leagues. Riddell's statements directed at youth football participants and leagues were misleading because the [Pittsburgh] study did not study concussion rates among youth football players." (Op. Compl. § 10).
>
> "Unfortunately, these misleading statements were highly successful in creating consumer confusion. Plaintiff and others purchased Revolution Helmets at market prices reflecting this illusory benefit of a reduced risk of concussion in comparison with other helmets. . ." (Op. Compl. § 3).
>
> "Midwestern Football purchases Revolution Helmets and the refurbishment of Revolution Helmets through contacts with a Riddell representative in West Virginia." (Op. Compl. § 5).
>
> "Because Riddell's claims were included in advertisements, marketing, and sales presentations, a reasonable consumer would likely be misled into believing that the Revolution Helmet will reduce concussions, and may do so by 31%. This allowed Riddell to capitalize on consumer confusion and charge a premium

---

[5] Another court, considering the identical issue of whether Riddell's use of the Pittsburgh study to advertise youth helmets was false or misleading, observed that "[Riddell's] reference to a statistic from a study which did not include any youth helmet models is at least misleading or deceptive." <u>In re Riddell Concussion Reduction Litigation</u>, 121 F. Supp. 3d 402, 418 (D.N.J. 2015). While the New Jersey court addressed a range of issues not relevant to the instant motion, its reasoning with respect to the advertising of Riddell's youth helmets is noteworthy.

>price of approximately $50 for the Revolution Helmet, which reflected the illusory safety benefit of its 'Concussion Reduction Technology.'" (Op. Compl. § 20).

These allegations serve to frame up the elements required for a section 46A-6-106(a) claim. The allegations give rise to the theory that Riddell was able to demand a higher market price for youth Revolution Helmets by claiming the devices reduced the rate of concussive injuries experienced with traditional helmets. Midwestern alleges that because the Pittsburgh study did not examine youth helmets, Riddell had no basis to claim such a benefit. As a result, Midwestern suffered a loss when it purchased Revolution Helmets at an inflated price -- relying on Riddell's safety claims -- instead of purchasing the lower-priced traditional helmets that were not represented as having the enhanced concussion protection. Riddell argues that any inflation of its market prices is purely speculative without reference in the complaint to what comparable helmets were available. While expert testimony may be required to establish the but-for market price, such proof need not be offered in the pleading.[6]

---

[6] Riddell argues that Midwestern should be required to plead precisely what it paid for the helmets and what the price of comparable products would have been, relying on a decision in the related litigation in New Jersey discussed above. See <u>In re Riddell Concussion Reduction Litigation</u>, 77 F. Supp. 3d 422, 436 (D.N.J. 2015). However, the operative complaint's inclusion of a $50 figure for the retail mark-up alleged provides a sufficient basis under Rule 12(b)(6) and Rule 9(b) to support a plausible claim. In the New Jersey litigation cited, the court's holding

14

Finally, Riddell claims that the operative complaint does not meet the heightened pleading standard of Rule 9(b), because it fails to allege the specific time, place and contents of the misleading representations made by the defendant. The court concludes that the operative complaint sets forth the plaintiff's claim with the particularity required by Rule 9(b). The operative complaint alleges Midwestern purchased Revolution Helmets on an annual basis. It asserts that the Revolution Helmets were first offered for sale in 2002, with concussive reduction technology claims made through a number of advertising channels at that time and up to the present day. (Op. Compl. ¶¶ 8, 20). These allegations, together with the portions of the complaint quoted above, adequately set forth the time, place, and contents of the misleading representations at issue, satisfying the requirements described by our court of appeals in <u>Wilson</u> and <u>Nathan</u>.

The court concludes that the operative complaint adequately states a claim under the WVCCPA. Midwestern has plausibly alleged that it suffered a loss due to Riddell's misleading statements respecting the youth helmets it purchased. These allegations include facts sufficient to establish causation,

---

was based, at least in part, on the plaintiffs' failure to specify what the alleged "price premium" amounted to.

reliance, and cognizable injury and to satisfy the particularity requirements of Rule 9(b). Consequently, the motion to dismiss the WVCCPA claim lacks merit.

B. Claim for Unjust Enrichment

The elements of a claim for unjust enrichment in West Virginia are: "(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." Employer Teamsters-Local Nos. 175/505 Health and Welfare Trust Fund v. Bristol Myers Squibb Co., 969 F. Supp. 2d 463, 471 (S.D.W. Va. 2013) (citations and internal quotations omitted) (alteration in original). The benefit or property at issue "must have been acquired by means of fraud or other similar circumstances which negate the property holder's continued retention of the subject property." Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP, 231 W. Va. 577, 587 (2013) (citing Annon v. Lucas, 155 W. Va. 368, 382 (1971)).

In Employer Teamsters, the court dismissed a claim for unjust enrichment resulting from the defendant's sale of a pharmaceutical based on marketing claims representing that the product was more effective than its competitor. There, the court

noted that plaintiff failed to "allege how Defendant's retention of payments for a product that was effective in its ordinary purpose -- though perhaps not as effective compared to other drugs as claimed -- rises to the level of constituting unjust enrichment." 969 F. Supp. 2d at 472. Riddell argues that this case is similar, because while Midwestern alleges that the Revolution Helmets it purchased are not more effective than other helmets at reducing the risk of concussion for youth athletes, there is no allegation that the helmets were ineffective generally. However, Employer Teamsters is distinguishable from the instant case. There, the court dismissed the plaintiffs' underlying tort claim and noted that "the [complaint did] not allege, let alone plausibly, whether any prescriptions were written based on a misunderstanding of [the drug's] efficacy." 969 F. Supp. 2d at 472. By contrast, the operative complaint plainly alleges that members of the proposed class were misled by Riddell's misleading statements and purchased Revolution youth helmets as a result of those statements.

Accepting the facts alleged in the operative complaint as true and drawing all reasonable inferences in the plaintiff's favor, the court concludes that Midwestern has plausibly stated a claim for unjust enrichment under West Virginia law. Midwestern alleges that a benefit was conferred on the defendant when it knowingly collected a market premium for its youth helmets thanks

17

to its misleading marketing claims. Under the circumstances, Midwestern has plausibly alleged that it would be inequitable for Riddell to retain that benefit. While it remains to be seen whether Midwestern can show that it would be inequitable or unconscionable for Riddell to retain the payments it has received, dismissal of the unjust enrichment claim at this stage would be premature. See Realmark Developments, Inc. v. Ranson, 208 W. Va. 717, 721-22 (2000) (reversing summary judgment on unjust enrichment claim to allow for further factual development on whether it would be inequitable or unconscionable for defendant to retain benefit received).

IV. Conclusion

For the reasons stated, it is ORDERED that Riddell's motion to dismiss be, and hereby is, denied.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 17, 2016

John T. Copenhaver, Jr.
United States District Judge